24152.   SIMS v. THE STATE.

Argued June 12, 1967—Decided June 22, 1967—
Rehearing denied July 6, 1967.

*Howard Moore, Jr., Jack Greenberg, James M. Nabrit, III, Conrad K. Harper,* for appellant.

*Dewey Hayes, Solicitor General, Arthur K. Bolton, Attorney General, Marion O. Gordon, Assistant Attorney General, Mathew Robins, Deputy Assistant Attorney General,* for appellee.

NICHOLS, Justice. After the remittitur from this court was made the judgment of the trial court the defendant sought again to present questions for decision by the trial court which had been previously adjudicated and affirmed by this court on the appearance of the case reported in 221 Ga. 190. The judgments of the trial court there affirmed are established as the law of the case and the enumeration of error seeking to re-adjudicate such questions presents nothing for decision by this court. See *Rawlins v. State*, 126 Ga. 96 (54 SE 924), and *Reece v. State*, 211 Ga. 339 (85 SE2d 773), reversed on other grounds 350 U. S. 85 (76 SC 167, 100 LE 77).

■ The U. S. Supreme Court in reversing the prior decision of this court held that a separate hearing should be had on the question of the voluntariness of the defendant's confession. This hearing was held after the remittitur from this court was made the judgment of the trial court and by agreement the question was considered by the trial court based upon the record previously made in the case.

The trial took place prior to June 14, 1966, and the strict requirements of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974), do not apply. See Johnson v. New Jersey, 384 U. S. 719 (86 SC 1772, 16 LE2d 882); *Gunter v. State*, 223 Ga. 290, 294 (154 SE2d 608).

The defendant testified that after being arrested he was taken to the office of Dr. Jackson where several people were present. The defendant was then asked by his attorney: "Q. And did anything happen to you after you got in Dr. Jackson's office? [fol. 169] A. Yes, sir. Q. What happened to you Isaac? A. Well, Dr. Jackson, he knocked me down and kicked me over my eyelid and busted my eye on the right side. Q. Did anything else happen to you? A. And he grabbed me by my private and drug me on the floor. Q. Did he drag you by your private on the floor? A. Yes sir. Q. Did that hurt you, Isaac? A. Yes, sir. Q. Did it hurt you a lot? A. Yes, sir; pretty bad."

On cross examination the defendant testified that Deputy Sheriff Dudley Jones was present when he made a statement, that he remembered the deputy sheriff telling him that anything he said could be used against him in court, that he had known the deputy

sheriff for twelve or thirteen years, was not afraid of him and if he (the deputy sheriff) had read anything in the statement which the deputy sheriff took down as he (the defendant) made his statement which was wrong he would not have been afraid to tell him that it was wrong. He testified that he did not remember if he was advised of his right to counsel.

The physician, Dr. Jackson, whom the defendant accused of knocking him down, pulling him around by his private and kicking him, testified on the trial of the case that he did not knock the defendant down and did not kick him. He further testified that the defendant was in his office for only fifteen or twenty minutes and that the only thing he did was help remove the defendant's pants and shorts so that they could be "checked" as a result of the charges made against him. The officers testifying in the case testified as to the circumstances surrounding the defendant making the confession. These circumstances are fully set forth in *Sims v. State*, 221 Ga. 190, 197, supra, as follows: "The undisputed evidence as to the time and manner in which the statement was taken is as follows: the offense was committed about 10 a. m. on April 13, 1963. About 3 p. m. of the same day the defendant was arrested by Sergeant Sims of the State Patrol. Under instructions of Sergeant Sikes of Charlton County he was taken to the office of Dr. Jackson, and then to the jail in Waycross where he was placed in the custody of Ware County Sheriff Lee. About 6:30 p. m. of the same day, one Dudley Jones, a Deputy Sheriff of Ware County, saw the defendant whom Jones had known for twelve years or more. No one else was present—Jones asked him what 'he was doing up there.' Sims replied that he 'got in trouble with a white woman in Folkston, Georgia'; 'that he raped a white woman in Folkston.' Jones asked him whether he wanted to make a statement to that effect to the sheriff. Sims replied that he did. Jones took him to the sheriff's office where his statement was taken, reduced to writing, and signed at about 10:30 p. m. on April 13, 1963. Sheriff Lee testified that before the defendant made any statement he advised him that he was entitled to an attorney and that the defendant said he did not want an attorney; he advised Sims that any statement he made could be

used against him. The sheriff further testified that no threats or promises of hope of benefit or reward were made to induce Sims to make a statement. His statement was reduced to writing and signed by Sims in the presence of the sheriff, the Chief of the Ware County Police, Jones, the deputy sheriff of the county, and B. C. Worley, a constable. On April 15, 1963, after Sims had been transferred to the Charlton County jail at Folkston, F. F. Cornelious of the Bureau of Investigation read to the defendant his written statement of April 13 and he asked Sims if it was true. Sims replied, 'Yes sir, that is right.' "

The trial judge, as the trior of fact, who presided at the trial when the various witnesses testified, had the opportunity of judging their credibility and it cannot be said the decision of the trial court finding that the confession was voluntarily made was error for any reason assigned.

*Judgment affirmed. All the Justices concur.*