No. 12460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

———————————

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RAYMOND K LaFRENIERE,

Defendant and Appellant.

———————————

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Larsen and Gliko, Great Falls, Montana
David Gliko argued, Great Falls, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John P. Connor, Jr. argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
James R. Walsh argued, Deputy County Attorney, Great
Falls, Montana

———————————

Submitted: September 14, 1973

Decided: OCT 11 1973

Filed: OCT 11 1973

_____
Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendant Raymond K. LaFreniere from a judgment convicting him of statutory rape entered in the district court of Cascade County.

Appellant was charged with breaking into the home of a woman and her seventeen year old daughter at about 3:00 a.m., August 6, 1972. The testimony indicated the daughter was awakened by the sound of a noise of someone in the room and she thought she saw a naked man. She awakened her mother who was sleeping in the same room. The mother was assaulted and her hand was cut when she tried to take a knife away from the intruder. During the following hour and a half the assailant raped the daughter twice and attempted to rape the mother. As soon as they were sure the assailant had left their home the women called the police who took both women to the hospital. The medical evidence given by Dr. John Pfaff, Jr., indicated that the assault as charged had occurred.

Both women testified there was sufficient light in the bedroom to identify objects in the room and they gave the investigating officers this description of the assailant: "a young man, about 5 feet, 11 inches in height, with dark, curly hair".

As soon as possible a statement was taken from the women and at that time the daughter indicated she thought her assailant resembled a boy who she had observed staring at her on several occasions over a period of several weeks from an apartment directly across from her home. Appellant lived in this apartment with his stepgrandfather.

Three days after the assault Detective Macek visited the apartment where appellant lived and talked with both the grandfather and appellant. According to appellant, Macek asked him if he knew anything about the rape case and he answered, no. Too, Macek asked him if he would volunteer to appear in a lineup and he said he was willing.

On August 14 appellant was visited by policeman Detective Jacobson. Jacobson indicated that due to the fact both women felt appellant was the man involved and because he was in possession of other facts he went to the apartment to talk with appellant. He was greeted at the door by a ten year old niece of appellant and she told him appellant was upstairs. When appellant came downstairs Jacobson went into the kitchen with him and there he informed appellant he felt he was guilty of the assault. He told him why and allowed him to read some material upon which he based his conclusion. Jacobson also read appellant the Miranda warning. At trial appellant denied he was given the Miranda warning before he answered "yes" to the question of whether or not he had raped the girl.

Jacobson testified:

"A. I approached --- after I had been seated at the kitchen table with Mr. LaFreniere, and once read him his rights, and explained just what I had as far as evidence, I asked Mr. LaFreniere if he needed any help of any type, and he told me, 'Yes, I believe I do.' I said, 'Is the nature of your problem have to do with a sex problem?' and he said, 'I believe it is.' I then said to him, 'Do you want---' no, I then asked Mr. LaFreniere if he knew anything about the crime, and wanted to talk to me about the crime, and he says, well, the exact words he used don't come to me right now, but he did say, in context, that he knew about the crime, and it had been bothering him ever since a previous detective had been talking to him, and that he couldn't sleep, he related to me, since the last detective had talked to him. I then asked him if he was the one---I asked him if he was, in fact, the one who had raped * * * and he said to me, 'Yes.'"

At this point Detective Jacobson again gave appellant the Miranda warning, suggested that a lawyer be brought in, and asked appellant to come to the police station to give a statement. At the station, before taking the statement and after another Miranda warning, appellant asked for an attorney---no statement was taken.

Appellant contends he was not given the Miranda warning before his admission to having committed the crime. He testified that he thought Detective Jacobson was talking about a drinking problem when he answered yes to Jacobson's question as to whether or not he had a problem.

This testimony was reviewed by the trial judge in a separate hearing on a motion to suppress. The motion to suppress was denied.

On August 16, 1972, two days after his arrest, appellant was positively identified by the two women picking him in a lineup. One of the victims also identified him when a voice query was held. Appellant was represented by counsel at the time of the lineup and every precaution was taken to protect appellant's rights.

Appellant brings two issues upon appeal:

1. Whether the investigating officer prejudiced appellant's trial by reading directly from a copy of a police report?

2. Whether the state met the proper burden of proof on appellant's motion to suppress a confession?

A technical question has been raised as to whether or not the above issues are properly before this Court. While we recognize the validity of the question, we are aware that the crime involved was a serious crime and a severe sentence was imposed and for that reason we will fully discuss the merits of the issues raised.

As heretofore noted, there was conflict in the testimony of appellant and Detective Jacobson. On redirect examination the state produced a copy of a police report prepared and filed by Jacobson after appellant's arrest. Jacobson was asked to read specific portions of the report concerning the verbal exchange between himself and appellant relating to appellant's admission of guilt. Counsel for appellant objected on the ground that "this is

not the original of the report * * * but rather it is only a copy, and, therefore, should not be admitted into evidence." The state indicated that it did not intend to introduce the report into evidence, nor was it, but rather it was using the report to refresh Jacobson's recollection. The court overruled appellant's objection and now appellant contends he was prejudiced.

Did the trial court follow permissible procedure in allowing the use of the memorandum or report by the witness for the purpose of refreshing his memory? The applicable statute is section 93-1901-6, R.C.M. 1947, which provides:

"When witness may refresh memory from notes. A witness is allowed to refresh his memory respecting a fact by anything written by himself, or under his direction, at the time the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution."

Jacobson wrote the report, it was available and was examined previous to trial by counsel for appellant; it was only used at trial to refresh Jacobson's memory. In considering the above quoted statute, this Court has not heretofore determined whether the term "writing" as set forth in the statute includes the use of a copy. However, California with a like statute, prior to 1967 when it was amended, has had cases construing its scope and intent. People v. Vera, 131 C.A.2d 669, 281 P.2d 65,69; People v. Gardner, 147 C.A.2d 530, 305 P.2d 614. In each case the issue was resolved in favor of allowance.

In Vera, appellant claimed error when a witness for the state was allowed to read in detail to a jury a mimeographed transcript of a conversation between witness and appellant. The court's reasoning allowing the witness to read the memo without introducing it into evidence was:

"In the instant case a rough transcript was made by a reporter, Sergeant Flouton then took it, listened to the recording, and supplied portions which were lacking in the rough draft. The rough draft, being a document prepared under the Sergeant's direction, fully met the requirements of section 2047 of the Code of Civil Procedure, and it was proper for him to use it at the trial to refresh his recollection of the conversation.

"Appellant's contention that if the document was used to refresh the present memory of the witness, the latter should have referred to the writing and then testified, independent of the memorandum -- as of his own personal recollection, is answered by the court in People v. Brown, 3 Cal.App. 178, 179, 84 P. 670, 671, wherein it is said: 'And the rule is not different where the witness has a copy of the original in his hands, which he has compared, and swears that the same is an exact copy of the original memorandum.'"

In Gardner, a witness was allowed to read aloud to the jury, over appellant's objection, a typewritten transcription of a conversation between himself and the appellant. The court allowed this reading on the basis that a witness without present recollection of the facts who is allowed to refresh his memory from a memorandum may read directly from the memorandum.

In both California cases the appellate court found no error in the use of a copy as opposed to the original and allowed either the entire memorandum or portions to be read to the jury.

We believe the best rationale interpreting section 93-1901-6, R.C.M. 1947, in not requiring the introduction of the memorandum or report into evidence, is set forth in United States v. Riccardi, 174 F.2d 883, 889:

"The reception of a witness' testimony does not depend upon whether it is true; truth is a matter for the trier of fact unless, of course, the evidence is so improbable that reasonable men would not differ upon it. When the witness testifies that he has a present recollection, that is the evidence in the case, and not the writing which stimulates it. If his recollection agrees with the writing, it is pointless to require proof of the accuracy of the writing, for such proof can only amount to corroborative evidence."

Appellant relies on State v. Sorge, N.J.L. (1940), 15 A.2d 776, but we find that factually Sorge has no application here. There, in a rape case, the prosecutrix executed a statement in the presence of the accused which contained statements prejudicial to the accused. This statement was read to the jury by a police

officer and was admitted by the trial court in showing a course of conduct. The appellate court held that the reading of the statement was error because the statement was "hearsay" not admissible as an "admission against interest".

Here, Jacobson simply relied upon a report which he had prepared in order to testify with greater accuracy regarding the admission of appellant. We find no merit to appellant's first issue.

Appellant's second issue questions the trial court's refusal to grant appellant's motion to suppress. Appellant argues that this Court should adopt an even more stringent standard of proof concerning voluntary confessions than that required by the United States Supreme Court. He argues that the standard of proof should be beyond a reasonable doubt as opposed to the preponderance of evidence standard set in 1972 in Lego v. Twomey, 404 U.S. 477, 30 L ed 2d 618, 626, 627, 92 S.Ct. 619. There the United States Supreme Court heard the same argument and rejected it. In rejecting such contention, the court stated:

> "Since the purpose that a voluntariness hearing is designed to serve has nothing whatever to do with improving the reliability of jury verdicts, we cannot accept the charge that judging the admissibility of a confession by a preponderance of the evidence undermines the mandate of In re Winship, 397 U.S. 358, 25 L ed 2d 368, 90 S.Ct. 1068 (1970). * * *

> "To reiterate what we said in Jackson: when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary."

The general rule set forth in both Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L ed 2d 908, and Lego is that a determination relative to the voluntariness of a confession must be made in a proceeding separate and distinct from the trial itself, and further, a preponderance of the evidence standard of proof is constitutionally sufficient. That procedure and standard has long been the established rule in Montana. State v. Chappel, 149

Mont. 114, 423 P.2d 47; State v. Rossell, 113 Mont. 457, 127 P.2d 379; State v. Dixson, 80 Mont. 181, 260 P. 138.

Finding no error the judgment of the district court is affirmed.

------------------------------------------
Associate Justice

We Concur:

------------------------------------------
Chief Justice

------------------------------------------

------------------------------------------
Associate Justices.

Mr. Justice Haswell, specially concurring:

I concur in the result on the basis that the two issues raised by appellant are not presented by the record in this appeal.

On the first issue, the defendant objected to admission in evidence of a copy of a police report. As the report was neither offered nor admitted in evidence, there is nothing for this Court to review.

The second issue seeks a ruling on the quantum of proof necessary to sustain a motion to suppress a confession. Appellant contends that proof "beyond a reasonable doubt" is required, while the state argues that proof "by a preponderance of the

evidence" is sufficient.

In substance the record discloses testimony by a police officer that defendant was advised of his constitutional rights prior to any admission or confession, while defendant testified that no such advice or warning was given prior thereto. This conflicting testimony presented no middle ground-- if one version was true, the other was necessarily false. The trial judge, in weighing the credibility of the two witnesses and their respective testimony, chose to believe the police officer and disbelieve the defendant. Accordingly, defendant's motion to suppress this confession was denied. As the testimony of the police officer under such circumstances satisfied both standards of proof, this issue is not presented by the record herein.

_____

Associate Justice.