Theresa DODGE, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4671.

Supreme Court of Wyoming.

March 24, 1977.

Kim D. Cannon and Charles R. Hart, Burgess & Davis, Sheridan, signed the brief and Kim D. Cannon appeared in oral argument on behalf of the appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div. and Allen C. Johnson, Legal Intern., Cheyenne, signed the brief and Allen C. Johnson and James N. Wolfe, County and Prosecuting Atty., Sheridan County, appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

The appellant-defendant was found guilty of manslaughter and assault and battery with a dangerous weapon, following jury trial, and regularly sentenced. She appeals, raising issues involving:

1. Denial of discovery of oral statements of defendant to police.

2. A ruling on voluntariness of statements by defendant.

3. A drunkenness instruction given by the trial judge to the jury.

4. Refusal of the court to instruct on the consequences of a verdict of not guilty by reason of mental illness or deficiency.

5. Substantial evidence to support the verdict.

We will affirm.

The defendant, following some drinking and after downing a tumbler of vodka, without any apparent provocation, stabbed and cut Lorraine Oldman—a three-inch gash over the eye with a knife. When the deceased Royce Brown, tried to help Lorraine, the defendant fatally stabbed him through the heart. Despite *Miranda* warnings given immediately before and following her being taken into custody, defendant stated in the first person and according to witnesses, "I killed him, I killed him"; "she was sorry that she had killed him, sorry that she'd stabbed him"; "I'm evil;" "Knives are meant to kill."

At arraignment, the defendant entered pleas of "not guilty," "not guilty by reason of mental illness or deficiency at the time of the alleged offenses," and "not triable by reason of present mental illness or deficiency" to a count of assault and battery while armed with a dangerous weapon in violation of § 6–70B, W.S.1957, Cum.Supp., and a count of manslaughter in violation of § 6–58, W.S.1957. Just prior to trial, the defendant personally advised the court on the record that she did not contest her doing of the acts. She then stood on the defense of not guilty by reason of mental illness or deficiency.[1]

1. By this procedure, a bifurcated trial was avoided. Section 7–242.5, W.S.1957, as amended by § 1, Ch. 191, S.L.Wyo.1975, provides:

"(a) When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental illness or deficiency, there shall be a sequential order of proof before the same jury in a continuous trial. First, evidence shall be heard and a special verdict taken on whether the defendant in fact committed the acts charged in the alleged criminal offense.

If by special verdict the jury finds that the defendant did in fact commit such acts, then evidence shall be heard on the remaining elements of the alleged criminal offense and on the issue of the mental responsibility of the defendant. In addition to other forms of verdict submitted to the jury, the court shall submit a verdict by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility. "(b) The prosecution shall prove beyond a reasonable doubt all the elements of the of-

Section 7–242.4, W.S.1957, Cum.Supp., in pertinent part, defines mental illness or deficiency excluding criminal responsibility:

"(a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law:

"(i) As used in this section, the terms 'mental illness or deficiency' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

\* \* \*"

Following a preliminary hearing at which the defendant was bound over to the district court, she moved for the right of inspection of the reports of the Sheridan County sheriff's department and the City of Sheridan police department which pertained to any oral statements made by her bearing on her guilt or innocence. The motion was denied by the trial judge, a ruling defendant claims as error. Defendant's position is in complete conflict with Rule 18(b), W.R. Cr.P.:

"Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the State, upon a showing of the materiality to the preparation of his defense, and that the request is reasonable. Except as provided in subdivision (a)(2) this rule does not authorize the discovery or inspection of *reports, memoranda or other internal governmental documents made by governmental agents in connection with the investigation or prosecution of the case,* or of statements made by State witnesses or prospective State witnesses (other than the defendant) to governmental agents except as provided in subdivision (c) of this rule." (Emphasis added.)

No statement was taken from the defendant falling within Rule 18(a), W.R.Cr.P.:

"Upon motion of a defendant, the court may order the attorney for the State to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant or copies thereof, within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the prosecuting attorney, (2) results of reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney, and (3) recorded testimony of a defendant before a grand jury." [2]

The only papers in possession of the sheriff and the police department were their own reports, as contemplated by the rule.

Additionally, the defendant, as a result of the preliminary examination, had access to every statement made by the defendant. At the preliminary, police officers testified to statements volunteered by the defendant without and before any interrogation by any law enforcement official. At the scene of the killing, she spontaneously stated, "I stabbed him." An officer attempted to interrupt her from speaking out in order to read the *Miranda* warning to her but she persisted in saying and repeating, "I did it, I stabbed him," "I stabbed the son-of-a-

---

fense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant.

\* \* \*"

No issue is raised as to the correctness of proceeding in the fashion followed.

**2.** The defendant had the benefit of all reports relating to her mental condition. No grand jury proceedings were had.

bitch." En route to the police station in a police car, the news came over the police radio that her victim had died on the way to the hospital. She yelled that, "I killed him, I stabbed him, I'm sorry I killed him." None of these statements were made in response to any question by any law enforcement officer. At the preliminary, it was also testified that at the police station, the sheriff proceeded to a formal questioning. After reading the *Miranda* rights to her and being satisfied that she understood them, he asked her what happened. She advised, "I killed him, I killed the son-of-a-bitch, I'm evil, knives are made to kill."

■ All of this testimony was repeated at the trial, with nothing added nor deleted. An in camera examination of the police reports, incorporated in the record, discloses no additional statements made by the defendant to law enforcement officials. There must be some abuse of discretion by the trial judge in refusing discovery, before we can hold the denial, error. *State v. Hill,* 1973, 211 Kan. 287, 507 P.2d 342; *State v. Bailey,* 1971, 94 Idaho 285, 486 P.2d 998. We see no abuse here. The police reports have been made a part of the record and the defendant was eventually accorded an opportunity to see them. She has failed to point out to this court in her brief argument any reference to statements made by her and contained in those reports which would have aided her cause which had not been previously disclosed at the preliminary hearing.

■ There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey,* 1977, —— U.S. ——, 97 S.Ct. 837, 51 L.Ed.2d 30; *Wardius v. Oregon,* 1973, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82. This does not mean that the prosecution can suppress evidence favorable to the defendant. Suppression of evidence favorable to an accused upon request violates due process where the evidence is material to guilt. *Brady v. State of Maryland,* 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The police and sheriff's reports are not evidence but the State would be required to disclose evidence favorable to the

defendant and that was never refused— only access to the reports; the work product of county and city law enforcement personnel was refused and properly so.

We also must wonder at defendant's great concern with her statements, of which she already had knowledge, in light of the fact that she admitted the killing and the assault and battery by stabbing to the court before trial. All her statements went to an admission of killing Royce Brown and stabbing Lorraine Oldman. This will be discussed further in our dealing with defendant's next claim of error. We hold that defendant was not deprived of any discovery to which she was entitled.

Prior to trial, a hearing was held in which the defendant sought to suppress statements made by her in the presence of and to the police, on the ground that they were not voluntary. Defendant urges that the trial judge in his ruling denying suppression should have found specially that they were voluntary "beyond a reasonable doubt." The court's ruling was as follows: " * * * The Court's going to deny the motion to suppress the oral statements made by the defendant." Following that ruling, defendant admitted she had killed Brown and stabbed Lorraine Oldman and the trial proceeded on the issue of mental responsibility. Defendant's admission of the acts eliminated the statutory procedural step that, " * * * First, evidence shall be heard and a special verdict taken on whether the defendant in fact committed the acts charged in the alleged criminal offense. * * * " Section 7–242.5(a).

The order of evidence then presented did not proceed as contemplated by statute. Section 7–242.5(b) provides that the "defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant." But the State and the defendant agreed upon a different order of evidence and the State went forward with proof of mental responsibility including not only all the elements of the offense but expert psychiatric testimony, as well, before resting. The de-

fendant does not now raise any objection to the order in which the proof was presented. The trial did flow smoothly under the procedure settled upon. There was no question but what the sole issues would deal with defendant's mental responsibility and the defendant and the State each were aware of the evidence of the other so the burden of going forward had no material significance. The procedure adopted was practical, as well, because it gave the jury an essential background by sequence of events, permitting an informed transition into the real issue of mental responsibility.

But while the statements of the defendant were no longer important as far as the acts constituting the crime were concerned because she admitted she had killed Brown and had stabbed Oldman, they were nevertheless still an integral part of the State's case related to its burden of establishing mental responsibility. It was the State's burden to establish that she acted voluntarily in making the incriminating statements. "No confession or statement should be received unless the maker was capable of realizing what he was saying and not suffering from delusions or hallucinations, so that he knowingly, understandingly and comprehendingly made the statement." *Lonquest v. State*, Wyo.1972, 495 P.2d 575, cert. den. 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299.

■ The State in this case was insistent upon the necessity of receiving into evidence the statements of the defendant as a part of its proof of her mental responsibility and consequently her guilt. Much of the testimony of the State's psychiatrist related to the statements as establishing the competence of the defendant. Since the statements were received into evidence for the purpose of proving the ultimate guilt of the defendant on the mental responsibility questions, they must pass constitutional muster. We are satisfied they satisfy standards of admissibility laid down by the Supreme Court of the United States. We would be hard pressed to find that under the circumstances outlined and re-

flected by the record, the statements were anything but voluntary. There is no evidence of their having been made under any form of threat, violence, brutality, duress, pressure or promise of any kind. They were, except for her statements testified to by the sheriff, made gratuitously, originated within the defendant herself and unresponsive to any interrogation. The statement to the sheriff in response to a question was the same as the others and only uttered after a reading of the *Miranda* rights and the sheriff being satisfied that they were understandingly received.

■ The trial judge followed the approved procedure in conducting a separate hearing out of the presence of the jury to determine the voluntariness of the statements. There must be a separate fair hearing and a reliable determination on the issue of voluntariness in front of the judge alone before the statements may be received in evidence at the trial for jury consideration. *Lonquest v. State*, supra; *Lego v. Twomey*, 1972, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618.

■ The defendant here argues that there should have been an express finding by the trial judge following the voluntariness hearing that the statements made were voluntary "beyond a reasonable doubt." *Lego* makes it abundantly clear that the prosecution must convince the trial judge at least by a preponderance of the evidence that the confession was voluntary. While *Lego* left it open to the states to adopt a higher standard, like the reaction of the Supreme Court of the United States, we find nothing is offered by the defendant to suggest that experience with admissibility rulings has shown they are unreliable or otherwise wanting in quality because not based on some criterion higher than preponderance.

Although it is true that in *Lonquest* the trial judge, following the voluntariness hearing, announced as part of his finding that voluntariness of the confession had been established beyond a reasonable doubt,

the verdict was returned in 1971. *Lego* was not decided until January, 1972. It is fair then to assume that there was then some question as to the applicable measure, so to avoid error, the highest was adopted. *Lonquest* did no more than observe a norm then, prudently followed by the trial court, not fix one to be followed. We now establish a preponderance of the evidence as a satisfactory standard.[3]

■ The defendant further urges that the trial judge should have expressly stated the statements to be voluntary and expressed the measure applied in that determination rather than just a bald statement that the motion to suppress oral statements was denied. We agree that it would be a better practice to do so and suggest there may be some occasion arise in the future in which we can now foresee such a determination would be critical, particularly if the evidence were seriously in dispute. Here, the evidence of voluntariness was so lopsidedly obvious that the trial judge could have arrived at no other conclusion.[4] In further support of the voluntariness of her statements, the defendant admitted the acts of stabbing and killing and moved the trial into the mental illness or deficiency stage. *Sims v. State of Georgia,* 1967, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, conformed to 223 Ga. 126, 153 S.E.2d 567, appeal after remand 223 Ga. 465, 156 S.E.2d 65, rev. 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634, conformed to 224 Ga. 36, 159 S.E.2d 290, demonstrates the dangers of not making specific findings. The evidence before the trial judge alone in *Sims* showed a confession of the defendant to have been involuntary, he

having been kicked in the head and dragged around by his private parts and a statement taken immediately afterwards by a deputy sheriff. No specific finding of voluntariness was made and the case passed on to the jury to determine voluntariness. On the record, the voluntariness was not manifested in the judge's hearing. The *Sims* decision advises:

" * * * Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. * * * "

Without such a finding, a close conflict of evidence could throw out a confession at this appellate level, although such is not the case before us. The evidence before the trial judge alone was more than sufficient, particularly when implemented by the defendant's admission of the acts. Voluntariness does appear here on the record, with unmistakable clarity.

■ This view is not only consistent with *Sims* but conforms to a further declaration of the United States Supreme Court in *Jackson v. Denno,* 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205:

"In jurisdictions * * * following the Massachusetts procedure, under which the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are

---

3. While not probably complete, it appears that the preponderance of evidence rule has been adopted by courts of the western states as follows: *State v. Arredondo,* 1974, 111 Ariz. 141, 526 P.2d 163; *People v. Shearer,* 1973, 181 Colo. 237, 508 P.2d 1249; *State v. Stephenson,* 1975, 217 Kan. 169, 535 P.2d 940; *State v. LaFreniere,* 1973, 163 Mont. 21, 515 P.2d 76; *State v. Braun,* 1973, 82 Wash.2d 157, 509 P.2d 742; *State v. Crank,* 1943, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542. West's Pacific Digest, the source of this information, did not disclose any state that had adopted a "beyond

a reasonable doubt" standard, though there may well be some.

4. Four law enforcement officers testified as to the voluntary nature of the statements and giving of the *Miranda* warning on two occasions, even though those to the police were uttered without interrogation. The defendant testified that she had no memory of making any statements at all. The opinion of defendant's psychologist, testifying to the defendant's mental condition, was inconclusive and can even be understood to be that defendant knew what she was doing. The State's psychiatrist

expressly stated or may be ascertainable from the record. * * * " [5]

We practice the Massachusetts procedure in this jurisdiction. We hold as long as the court's findings can be ascertained from the record, that is sufficient. This view has been persuasive in other courts. *Wilson v. State*, Fla.1974, 304 So.2d 119, 120; *State v. Erving*, 1966, 180 Neb. 824, 146 N.W.2d 216, cert. den. 386 U.S. 998, 87 S.Ct. 1320, 18 L.Ed.2d 348; *Wade v. Yeager*, 3 Cir. 1969, 415 F.2d 570, cert. den. 396 U.S. 974, 90 S.Ct. 466, 24 L.Ed.2d 443.

▮▮▮ While we use federal cases by way of authority, our holdings on the question just discussed are made under § 11, Art. I, Wyoming Constitution,[6] and not the Fifth Amendment to the Constitution of the United States. *Richmond v. State*, Wyo.1976, 554 P.2d 1217, 1223. No person can be compelled to testify against himself and is immune from the effect of incriminating statements unless such immunity is waived with knowledge of rights. *Dryden v. State*, Wyo.1975, 535 P.2d 483. We find the defendant's immunity waived. She condemned herself by her own utterances.

The defendant contends that not only is the trial court's Instruction No. 4 contrary to the language and intent of § 6–16, W.S.

1957,[7] but it bars a finding of not guilty by reason of mental illness or deficiency if alcohol related as intended by the legislature in enacting § 7–242.1, et seq., W.S. 1957, Cum.Supp., as well. The instruction given by the trial court was as follows:

"Our law provides that drunkenness shall not be an excuse for any crime or misdemeanor.

"This provision of the law means that if the evidence shows that the defendant was voluntarily intoxicated when she committed the offenses charged in the information, her intoxication is not a defense to such charges.

"Intoxication of a person is voluntary if it results from her willing [sic] partaking of any intoxicating liquor when she knows that it is capable of an intoxicating effect or when she willingly assumes the risk of that effect as a possibility."

▮▮▮ To prove the crime of manslaughter,[8] it is not necessary to establish a deliberate intent to kill or any other specific intent. *Gustavenson v. State*, 1902, 10 Wyo. 300, 323, 68 P. 1006, 1010. Intoxication was an issue in that case.

▮▮▮ The use of a deadly and dangerous weapon in a deadly and dangerous manner raises a presumption of malice.[9] *Bal-*

was of the opinion her statements were made with understanding:

5. *Jackson* explains the rejected New York rule to be one where the question of voluntariness is presented to the jury, where reasonable men could differ or even if the facts are in dispute. The only time the New York judge could exclude on the rule of voluntariness is when under no circumstances could the confession be deemed voluntary.

6. Section 11, Article I, Wyoming Constitution, provides that, "No person shall be compelled to testify against himself in any criminal case, * * * "

7. Section 6–16 provides:
"Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetuation of an offense, in which case the person or persons so causing said drunkenness for such malignant purpose, shall be considered principal or

principals, and suffer the same punishment as would have been inflicted on the person or persons committing the offense, if he, she, or they had been possessed of sound reason and discretion. Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention."

8. Manslaughter is defined as follows:
"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years."

9. Assault and battery with a dangerous weapon is defined as follows: Section 6–70 B.
"Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being,

*linger v. State,* 1968, Wyo., 437 P.2d 305. Defendant here offered no evidence to rebut that presumption such as some justification for the stabbing, but relied entirely upon her mental irresponsibility. The defendant's objection [10] to the instruction did not include any request that the following portion of the drunkenness statute be incorporated:

"* * * Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention."

Since the defendant placed no reliance on the fact that she could entertain no intention because of the extent of her intoxication, as reflected by the objection, then we cannot view the instruction as deficient. In the brief of defendant it is also clearly stated that she was not defending upon the basis of drunkenness. We cannot see that the court's instruction enlarged upon or changed the legislative intent. Nor is there any need to relate the statute by court instruction to the defense of mental irresponsibility. Defendant's cross-examination of the State's expert witness and examination of her own witnesses attempted to associate alcohol with mental illness and deficiency. While not very productive, that tactic opened the door for defendant to argue along those lines and attempt to impress the jury. The jury was apparently not convinced.

■ Intoxication of the defendant was frequently referred to during the trial, particularly with respect to defendant's understanding of what she was saying in her admissions and their voluntariness. In cross-examination of experts, the defense inquired as to the effect of alcohol on a person of the mental caliber of defendant.[11]

---

shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

10. The objection by Mr. Cannon, as it appears in the record, is as follows:

"The third objection, Your Honor, is to Instruction No. 4 *offered by the prosecution in this case,* which does not need repeating here. It would be sufficient to describe that it is an instruction related to the effect of drunkenness on the defense presented by the defendant. We object to this instruction on the grounds that there was no evidence of drunkenness of the kind envisioned by the draftsman of the statute, W.S. 6–16. The inclusion of this instruction is prejudicial and misleading to the defendant's case. Furthermore, we would also object to everything in the instruction past the first sentence, which refers to the word 'voluntary intoxication' and the phrase, 'voluntary intoxication' was not used within our statute. And this goes far beyond what the statute describes and includes a much greater range of alcohol-affected behavior than the statute addresses. Also, Your Honor, the State's own witness, Dr. William Allport, has defined an alcohol related condition as being a mental illness in this case, and the jury is misled by this instruction and unable to make this distinction whether it shall consider what is a bona fide mental illness in reaching its verdict with respect to the defense presented.

"MR. HART: We also object to this instruction on the grounds that the term 'drunkenness,' the connotation of this term is an extreme condition of which there's been no evidence in this case that such a condition exists.

"MR. CANNON: And furthermore, the instruction fails to make a distinction between this extreme condition of drunkenness and other less intoxicated stages, further fails to address itself to the effect of chronic alcoholism and a relationship between that and mental illness."

With respect in particular to Mr. Cannon's last quoted statement, we make a pertinent observation. Attorneys have a dual duty, i. e., not only to make proper objections but to submit proper statements of the law as implement their view. Rule 51, W.R.C.P., makes this clear in the following manner:

"* * * any party may file written requests that the court instruct the jury on the law as set forth in the requests * * *. No party may assign as error the giving *or the failure to give* an instruction unless he objects thereto * * *." (Emphasis added.)

The effect of the failure to make such requests has been noticed in *Moore v. State,* Wyo.1975, 542 P.2d 109, 112, and *Sims v. State,* Wyo.1975, 530 P.2d 1176, 1182. We find *no written re-quests* amongst the instructions offered by the defendant and refused by the court, incorporating and supporting the ideas so loosely propounded.

11. This presented some interesting sidelights. Defendant's expert testimony was that the results were unknown. The State's psychiatrist testified that in some instances it could improve mental capabilities.

The intoxication of defendant received so much attention that the court was warranted in instructing the jury in that regard.

In the instruction to the jury explaining the defense of not guilty by reason of mental illness or deficiency, the trial judge meticulously followed the pertinent language of §§ 7–242.4(a) and 7–242.5(a) and (b) and presented the statutorily-required forms of verdicts for jury consideration. What defendant now claims should have been in the instruction was for argument by counsel to the jury.

■ The defendant contends the trial judge should have instructed the jury that if the defendant was found not guilty by reason of mental illness or deficiency that there would be a determination by the court as to the appropriate custody, care and treatment of the defendant under the law. This court has rejected use of such an instruction. As far as the jury is concerned, subsequent disposition of the defendant is irrelevant, would have confused them and been an invitation for a compromise verdict. *Lonquest v. State*, supra, at p. 584; *Richmond v. State*, supra, at p. 1234; *Duran v. State*, Wyo.1976, 546 P.2d 434, 435.

■ Defendant finally claims that there was not substantial evidence to support the verdict. A careful study of the record discloses no ground for such a claim. On appeal, from a conviction, we must view the evidence in the light most favorable to the prosecution and afford it the benefit of every favorable inference that may fairly be drawn therefrom. *Hampton v. State*, Wyo.1977, 558 P.2d 504; *Horn v. State*, Wyo.1976, 554 P.2d 1141; *Evanson v. State*, Wyo.1976, 546 P.2d 412. There was little more than speculation on which the jury could have based a verdict other than guilty and responsible for her criminal conduct. The acts were admitted, the testimony of the State's psychiatrist was comprehensive,

understandable and clearly demonstrated no brain damage, no unusual retardation and no learning disability. The defendant had no disturbance in thinking that would prevent her from knowing right from wrong and conforming her conduct to the requirements of the law. She suffered from a personality disorder but mental illness or deficiency does not include such an abnormality manifested by anti-social conduct. Section 7–242.4(a)(i). Her amnesia did not set in until sometime after the crimes had been committed. It is a conversion reaction designed into the mechanism of the mind to cover up unpleasant experiences and, according to the expert testimony, will probably disappear when this case is finally concluded. On the other hand, the defendant's expert testimony was admittedly conjectural and to the effect that whatever she was suffering from only *might* affect her mental responsibility.

Affirmed.

ROSE, Justice, specially concurring.

I concur in the result only, but would add this:

As compared to *Richmond v. State*, Wyo., 554 P.2d 1217, decided by this court October 8, 1976, where the only grounds for appeal was an alleged violation of the Federal Constitution, and we, on our own motion, directed this ground be abandoned in favor of a State constitutional ground which was *not* relied upon by the defendant—in the instant matter, the defendant has alleged *both State and Federal constitutional violations*[1], and again—upon our own motion— we refuse to decide the Federal issue—although properly raised—and confine our holding to the State constitutional issue.

The effect of this game plan is to deny litigants full and unhampered access to the Federal courts and particularly the United States Supreme Court, even where defend-

---

1. The following is from appellant's brief:

"Where non-compliance with the constitutionally required procedure for determining the 'voluntariness' of appellant's in-custody statements, and the failure to apply the standard of beyond a reasonable doubt in assess-

ing 'voluntariness' violated the defendant's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I § 11 of the Wyoming Constitution Appellant's conviction must be reversed."

ants properly and carefully preserve their Federal constitutional grounds of appeal.

I disapprove of this tactic for all of the reasons indicated by my special concurrence in *Richmond v. State*, Wyo., 554 P.2d 1217, commencing at page 1235.

McCLINTOCK, Justice, specially concurring.

I concur in the majority opinion in all respects, except as to its failure to dispose of contentions of the appellant made under the Federal Constitution of the United States. In that respect I join with my Brother Rose in his special concurrence.