Eduardo RAIGOSA, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4669.

Supreme Court of Wyoming.

April 11, 1977.

King Tristani, Asst. Public Defender for Laramie County, Cheyenne, signed the brief and appeared in oral argument on behalf of the appellant.

V. Frank Mendicino, Atty. Gen., and Arthur T. Hanscum, Asst. Atty. Gen., Cheyenne, signed the brief and Arthur T. Hanscum appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Defendant-appellant was found guilty of second degree murder by a jury of a six-year old child under § 6-55, W.S.1957, and sentenced to a period of not less than 25 nor more than 35 years in the Wyoming State Penitentiary. From the judgment and sentence he has prosecuted this appeal, asserting three points of error: (1) the district court improperly admitted statements and confessions made by him following arrest;

(2) the district court improperly admitted opinion evidence as to cause of death; (3) the district court improperly denied submission of three requested jury instructions.

We will affirm.

On June 10, 1975, Cheyenne police received a call to go to a local address. Upon arrival, the officers were directed upstairs to a revulsive scene where two ambulance attendants were working on a small female child lying on the floor, apparently dead. The child's body was badly bruised (torso, legs, arms), cut and her head had been shaved. There were blood stains on the walls and carpet and fecal matter on the floor. In response to questioning by officers, defendant indicated that the child had been in Denver for a period of time and had been injured between two cars, but that no medical attention had been given nor had the appropriate authorities been notified. He indicated that the child's head had been shaved as a disciplinary measure about a week before; and that the fecal matter was dog excrement. Defendant and the deceased girl's mother, Linda Onofrey, were then taken to the Cheyenne police station for further questioning.

After arrival at the police station, defendant at first refused to make a statement. He then almost immediately changed his mind, stating that if he did not tell them, they would get the story anyway from the young lady, an apparent reference to the deceased's mother. After signing a standard waiver form indicating that he wished to furnish a statement to the police, defendant did provide and sign his first statement. A subsequent tape-recorded statement was taken later that afternoon and another handwritten statement taken later that same evening. A fourth statement taken was not admitted at trial. Each of his first three statements indicated generally that the accused had begun

spanking the deceased and lost his temper. At trial, it was established through the testimony of an expert pathologist that the deceased had died from a lacerated liver and resultant internal bleeding with shock, caused by a heavy blow.

Appellant's claim that it was improper for the district court to admit into evidence his post-arrest statements and confessions is founded on three contentions: (1) his arrest and subsequent detention were without probable cause; (2) the statements and confessions were involuntary and made without proper benefit of counsel; (3) the 42-hour delay between his arrest and "arraignment" [initial appearance before commissioner] was unnecessary and thus a violation of Rule 5(a), W.R.Cr.P. We shall in that order deal with each contention.

 The district court concluded, and neither party challenges, that the actions of the officers in escorting defendant to the patrol car constituted a detention of personal liberty from and after that time, and resulted in an arrest. It is argued that the warrantless arrest was not properly founded on probable cause. Verbal evidence obtained during unlawful custody must be excluded as the illegal fruits of a forbidden arrest. *Wong Sun v. United States,* 1963, 371 U.S. 471, 486, 83 S.Ct. 407, 416–417, 9 L.Ed.2d 441, 453. *Wong Sun* is applicable to the states. *Brown v. Illinois,* 1975, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. Nor does the mere giving of the *Miranda* warning remove the taint of illegal arrest. *Brown v. Illinois,* supra.

 Just what constitutes probable cause, or its functional equivalent in Wyoming law, reasonable grounds (§ 7–12.3, W.S.1957, Cum.Supp.)[1], sufficient to authorize a warrantless arrest, is, like many other things in the law, incapable of exact definition. As was observed in *Bivens v. Six*

---

1. Section 7–12.3 provides:

 "(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

 "(i) Any criminal offense is being committed in his presence by the person to be arrested; or

 "(ii) He has reasonable grounds to believe that a felony, as defined by section 6–2 of the statutes has been committed and he has reasonable grounds for believing that the person to be arrested has committed it; or

 \* \* \* \*"

*Unknown Named Agents of Federal Bureau of Narcotics,* 2 Cir. 1972, 456 F.2d 1339, 1348, and as quoted in *Rodarte v. City of Riverton,* Wyo.1976, 552 P.2d 1245:

> " 'The numerous dissents, concurrences and reversals, especially in the last decade, indicate that even learned and experienced jurists have had difficulty in defining the rules that govern a determination of probable cause, with or without a warrant. * * * ' "

*Rodarte* was a civil case but it correctly states the federal constitutional standard for establishing probable cause in criminal cases to be that which constitutes reasonableness. 552 P.2d at page 1251. Section 7–12.3 is couched in terms of reasonableness.

In *Rodarte, Williams v. United States,* 10 Cir. 1963, 323 F.2d 90, 93, cert. den. 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605, was cited, quoting from *Brinegar v. United States,* 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890, reh. den. 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513:

> " ' "The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." * * * Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. * * * ' "

The standards applicable to an officer are equal to those applied to a commissioner before issuance of an arrest warrant. *Lofton v. State,* Wyo.1971, 489 P.2d 1169, cert. den. 406 U.S. 949, 92 S.Ct. 2049, 32 L.Ed.2d 337; Rules 3 and 4(a), W.R.Cr.P.

▆ But the rule of probable cause must be applied with good sense with a view to practicality. As the Supreme Court of the United States has said in *Brinegar v. United States,* supra:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

The facts and circumstances considered need not amount to proof of guilt, or even to prima facie evidence of guilt but must be more than bare suspicion. *Brinegar v. United States,* supra, 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1889. The probable cause standard for warrantless arrests represents a balancing of interests. It is a practical, nontechnical concept affording compromise between two, many times opposing, interests. In *Gerstein v. Pugh,* 1975, 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54, 64, on remand 511 F.2d 528, 5 Cir., the Court quoted from *Brinegar:*

> " * * * This standard [prudent man], like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.
>
> " 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' " [338 U.S. at 176, 69 S.Ct. at 1311, 93 L.Ed. at 1890–1891.]

▆ From the cited cases, it can be determined the federal protections have their roots in the Fourth and Fifth Amendments of the United States Constitution. Compa-

rable provisions with the same intent are found in sections of Article I of the Wyoming Constitution as follows:

"4. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

"11. No person shall be compelled to testify against himself in any criminal case, * * *"

Since we meet all federal standards, our decision on the matter of probable cause will be based upon the above provisions of the Wyoming Constitution and not the Constitution of the United States. *Richmond v. State,* Wyo.1976, 554 P.2d 1217.

 The basic question raised by the defendant's initial assertion is whether or not from the facts and circumstances known just prior to arrest, a reasonable (prudent) man would have been led to believe that defendant had committed the instant crime, not whether a crime had been committed. When asked why the child was injured to such an extent, defendant replied that she had spent some time in Denver and had been accidentally caught between two cars; but he also indicated no accident report had been made nor was any medical attention sought. He said the deceased's head had been shaved as a disciplinary measure, yet a bleeding cut was visible on the skull, apparently from a blunt object. He stated that when he initially entered the apartment the child was lying on the stairs, yet no blood was found there. To the contrary, blood was found marking the walls indicting a struggle had occurred. To the

officer, the fecal matter on the floor resulted from the child's fear and not a dog. With such circumstances and questionable information, as well as the deceased's physical condition as a background, the drawing of a conclusion that the accused had committed a crime was not unreasonable. With such a foundation as probable cause, his warrantless arrest was not improper. To not arrest the defendant under those circumstances would, indeed, have been a dereliction of duty.

Defendant's second contention in support of suppression asserts that not only were his confessions and statements made involuntarily, but that he was also not provided with counsel before making them as required by § 7–9.3, W.S.1957, Cum.Supp.[2] He claims it was not shown beyond a reasonable doubt that his confessions were voluntary and that this, either separate from or in conjunction with his lack of counsel, requires suppression.

 Neither argument carries much merit. The trial judge, as he was required to do, followed approved procedure by conducting a separate hearing, out of the presence of the jury, to determine the legality and voluntariness of defendant's statements and confessions. *Dodge v. State,* Wyo. 1977, 562 P.2d 303; *Lonquest v. State,* Wyo.1972, 495 P.2d 575, cert. den. 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299; *Lego v. Twomey,* 1972, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618. From the evidence presented at this hearing, the trial judge concluded that the statements and confessions were properly taken and voluntarily made and suppression was accordingly denied. Although the standard by which the evidence of voluntariness was measured was not announced, a review of the exhibits

---

2. Section 7–9.3(a), in pertinent part, provides:

"If a person who is being detained by a law-enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is not represented by an attorney under conditions in which a person having his own counsel would be entitled to be so represented, the law-enforcement officers concerned, upon commencement of detention, or

the court, upon formal charge, as the case may be, shall clearly inform him of the right of a needy person to be represented by an attorney at public expense, and if the person detained or charged does not have an attorney, notify the public defender or trial court concerned, as the case may be, that he is not so represented. * * *"

Defendant was advised of his right to appointed counsel.

and testimony presented shows clearly that our recently announced standard of preponderance of the evidence [3] demonstrating voluntariness, had been met. As concerns defendant's lack of counsel, no request for counsel was ever made. Quite to the contrary, in fact, the evidence adduced at the suppression hearing and trial indicated that defendant was notified in writing of his constitutional rights, including the right to counsel, if indigent or otherwise, at least four times; and each time were knowingly waived, at least one waiver being made in writing. The right to counsel having thus been waived, defendant's argument based on § 7–9.3 is not viable; and admission of his statements and confessions was not error.

■ Defendant's third contention for suppression centers on an assertion that the less than two-day delay between his arrest and initial commissioner appearance was unnecessary and thus a violation of Rule 5(a), W.R.Cr.P.[4] As pointed out by our decision in *Richmond v. State,* supra, there is no hard and fast rule as to what constitutes "unnecessary delay"; and even if such delay is found, it of and by itself does not make admissions and confessions inadmissible. Each case must stand on its own facts.

■ Here, as in *Richmond,* the bulk of defendant's incriminating statements were given very shortly after arrest, i. e., within four hours, and were apparently motivated by an assumption on defendant's part that the police would get the story from the deceased child's mother, anyway. The burden is on the defendant to prove a violation of Rule 5(a), W.R.Cr.P.; and that his confession or admission was a product of his detention. There has been no evidence presented here that the police used the delay to extract any of the confessions. Although the length of the delay, 42 hours, is slightly troublesome in light of the proximity of a justice of the peace and the daytime

3. *Dodge v. State of Wyoming,* supra.

4. Rule 5(a), W.R.Cr.P., is as follows:
 "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the

hour of the arrest, the delay has not been shown prejudicial. As pointed out in *Richmond, Miranda* requirements have decreased the importance and softened the impact of Rule 5(a). Though we put no stamp of approval on any improper delay which takes place, it did not here affect the validity of defendant's statements and confessions which were not extracted by reason of his prolonged detention, nor was there any showing that the detention was for the purpose of squeezing out a confession. The admission of defendant's statements and confessions was not error.

■ *Commonwealth ex rel. Czako v. Maroney,* 1963, 412 Pa. 448, 194 A.2d 867, the only case cited by defendant in support of his claim that a coroner's jury should have been called to determine cause of death and, therefore, the testimony of an expert was improper, does not support any reason to reverse. In fact, it is to the contrary. It was there held that the finding of a coroner's jury is binding on no one as a judgment, the court going on to say:
 " * * * [A]n inquest is for the purpose of protecting the public interest. It is not for the protection of an offender and is definitely not a necessary ingredient of due process. A defendant in a murder case has no cause to complain that an inquest was not conducted. * * *"
We agree with the Pennsylvania court. There is no requirement that an inquest be held before prosecution for murder. *Walker v. People,* 1952, 126 Colo. 135, 248 P.2d 287. The verdict of a coroner's jury is merely advisory and has no probative effect. 18 Am.Jur.2d, Coroners or Medical Examiners, § 15, p. 529. See also Annotation 78 A.L.R.2d 1218, entitled "Reviewing, setting aside, or quashing of verdict at coroner's inquest." There is in Wyoming no statutory requirement for an inquest to be held as a condition precedent to prosecution.

arrested person without unnecessary delay before the nearest available commissioner. When a person arrested without a warrant is brought before a commissioner, a complaint shall be filed forthwith."

See §§ 7–81 through 7–91, as amended and superseded. The statutory provisions are clearly only an aid to assure a death was not unlawfully caused or to the contrary in aid of law enforcement.

■ It is well settled that an expert may state his opinion as to cause of death in a homicide case. 3 Wharton's Criminal Evidence, 13th Ed., § 617, p. 196. See also Annotation, 66 A.L.R.2d 1082, 1087, supplementing 136 A.L.R. 965, entitled "Admissibility of opinion evidence as to cause of death, disease, or injury." It is particularly essential in a case such as this where patent evidence of death cause may not be entirely conclusive, i. e., liver damage by external force resulting in death.[5] See Annotation, 65 A.L.R.3d 283, entitled "Necessity and Effect, in Homicide Prosecution, of Expert Medical Testimony as to Cause of Death." In a baby-killing case before this court, the expert testimony of a physician was properly received to establish that the infant was born alive in order to establish the death resulted from the criminal conduct of the defendant. *Bennett v. State,* Wyo.1963, 377 P.2d 634. The State has a heavy burden in establishing the guilt of a defendant and the jury's function is the quest for truth. The jury should not be deprived of evidence that will assist in its important fact finding function. That the defendant would prefer not to have evidence of cause of death before it, does not cause prejudice.

■ Defendant's third and final point of error asserts the trial court improperly denied submission of three requested instruc-

tions to the jury. Our discussion shall be limited to only two of the three refused instructions as the record reflects no objection at all having been made to the denial of the instruction concerning diminished capacity. Rule 31, W.R.Cr.P.; *Sims v. State,* Wyo.1975, 530 P.2d 1176; *Hays v. State,* Wyo.1974, 522 P.2d 1004.

■ Defendant asserts the refusal by the trial court of his offered instruction based on *Eagan v. State,* 1942, 58 Wyo. 167, 128 P.2d 215, was error. The refused instruction concerned the jury's acceptance of the testimony of an accused when he is the sole witness of a transaction charged as a crime. *Eagan* states that upon the fulfillment of certain conditions the jury is limited in its role as sole judge of a witness's credibility and the accused's testimony must be accepted. In the case at bar, not only were some of the required *Eagan* conditions not fulfilled,[6] but the jury was adequately informed as to its role on witness credibility and limitations thereof by numerous other instructions. When the principles of a refused instruction, even if correct, have been properly and sufficiently covered by other instructions, its refusal is not error. *Mares v. State,* Wyo.1972, 500 P.2d 530, 539. The defendant elected not to testify but expected the jury to accept statements favorable to him, without question, excerpted from the statements he had given the police. We would say that the instruction would damage the defendant because his explanations were so improbable and so inconsistent with the facts and circumstances that it would

---

**5.** On the initial medical examination of the child, the exact cause of death could not be determined with any certainty. None of the outward signs could be considered conclusive. A cut on the head caused by the child being thrown against a heating radiator was suspect. The little girl's body was covered with bruises, old and new, as well as abrasions, some scabbed over and others evidencing bleeding, as well as bleeding in the vicinity of the vagina. Autopsy revealed over a quart of blood in the abdominal cavity and the bladder lacerated. The kidneys were bruised, a slight hemorrhage in the bladder was evident, there was blood in the lungs and some ribs broken. None of the conditions except the torn or lacerated liver would have caused death. The causal connec-

tion was the external trauma (heavy blow) caused by the defendant's kicking or stomping the child. Medical opinion of cause of death is thus proper.

**6.** The rule of *Eagan* relied upon as the basis of an instruction by defendant is as follows:

"* * * Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted. * * * "

only draw additional attention of the jury to the implausibility of his position.

 Finally, defendant urges error in the refusal of his instruction to the effect that the State, if it uses an accused's confessions, is bound by the exculpatory statements therein unless the jury finds them to be false. The refusal of a similar instruction was upheld in *Alcala v. State,* Wyo. 1971, 487 P.2d 448, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823, both because the falsity of the exculpatory statements was shown by circumstantial evidence and because the cited rule requiring the instruction had lacked general acceptance elsewhere, 487 P.2d at 462; *State v. Casaus,* 1963, 73 N.M. 152, 386 P.2d 246, 248; *State v. Parker,* 1960, 33 N.J. 79, 162 A.2d 568, 575. Such reasoning is equally applicable here. Additionally, the defendant could point out and argue to the jury anything favorable to him. We can find no error in refusal of the court to give the instruction.

The defendant received a fair trial. Affirmed.

ROSE, Justice, specially concurring, in which McCLINTOCK, Justice, joins.

I can concur with the majority opinion, with the following exception:

Once again the court, out of hand, discards the defendant's Federal constitutional right of appeal, even though in all respects properly preserved.

I can only say again that I am violently opposed to what I consider to be this arbitrary and unauthorized appellate practice of this court. See Justice McCLINTOCK'S concurring opinion in *Richmond v. State,* Wyo., 554 P.2d 1217, in which I joined with a detailed separate concurring opinion on the subject. See also my special concurrence in *Dodge v. State,* Wyo., 562 P.2d 303 (decided March 24, 1977).