MYRTLE E. CASEY STEWARD, Plaintiff and Respondent, *v.*
JOHN JAY CASEY, NEMEROFF-HOLLAND CO., a corpora-
tion, BRIGHT-HOLLAND CO., a corporation, and
MAREMONT-HOLLAND CO., a corporation, Defendants
and Appellants.

No. 14171.
Submitted Dec. 18, 1978.
Decided May 30, 1979.
As Modified June 6, 1979.
595 P.2d 1176.

Frank M. Davis (argued), Dillon, John H. Jardine, Whitehall, for defendants and appellants.

Burns & Dwyer, Richard Burns (argued), Robert Dwyer (argued), Dillon, for plaintiff and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This is an appeal from the District Court, Fifth Judicial District, Beaverhead County, the Hon. Arnold Olsen presiding, in which judgment of foreclosure in favor of Myrtle E. Casey Stewart (Myrtle) against John Jay Casey (John) and the other defendants was granted.

John and Myrtle were formerly husband and wife. They were divorced in 1965. As a part of their marital property settlement, Myrtle received from John a promissory note executed by the corporate defendants in the face amount of $270,000. The terms of the note called for 215 monthly installments, beginning June 20, 1965. The first 60 installments were for payments of $600 per month, and the remaining installments were to be $1,500 per month, all to be paid to the credit of Myrtle at State Bank & Trust Company (Bank) at Dillon, Montana. John signed the promissory note as guarantor.

Arrangements were made with the Bank that the installments due on the promissory note from the corporate defendants to Myrtle would be paid by having the Bank withdraw the amount of

each installment from John's accounts at the Bank, and deposit the same to accounts credited to Myrtle. Under the arrangement with the Bank, the first 72 installments on the note were paid without incident. Payment of the 73rd installment due May 20, 1971 was never actually made. The Bank's installment collection ledger card showed the payment to have been made, but no money passed between John's or Myrtle's accounts. This "missed" payment had the effect of pushing all subsequent payments back one month. In 1976, the payment due on June 20 was made on August 30. The payments due on July 20, August 20 and September 20 were not made prior to September 21.

On September 21, 1976, Myrtle served notice on John, accelerating the note indebtedness in full, and she notified the Bank that she was exercising her option to accelerate the note under its terms. She instructed the Bank to receive no further payments on her behalf except the full accelerated amount.

The note provided for acceleration if any installment was delinquent for more than 60 days.

The District Court entered judgment against John and the corporate defendants and in favor of Myrtle for an indebtedness of $123,000 remaining to be paid under the note, plus accrued interest, and $20,000 in attorney fees and costs. It ordered foreclosure of the lands securing the payment of the note. John and remaining defendants filed their appeal. The District Court granted stay of execution pending appeal.

The District Court also ordered John to pay $120 in back child support, which is not in issue here.

In essence, John raises three main issues upon appeal:

1. Whether John was in default under the terms of the note.

2. Whether Myrtle is estopped from claiming default because (a) the Bank was her agent and (b) she had remained silent as to the delinquencies until she served the notice of default.

3. Whether the award of attorney fees was proper.

The first issue can be disposed of summarily. The court

found the installments on the promissory note were in fact delinquent for more than 60 days, the period proscribed by the terms of the note. The findings of a trial court in a nonjury trial will not be reversed upon appeal unless there is a clear preponderance of evidence against the findings. *Montana Farm Service v. Marquart* (1978), 176 Mont. 357, 578 P.2d 315; Rule 52(a), Mont.R.Civ.P. We hold the installments were delinquent for more than the 60 day period.

■ On appeal John is placing greater reliance on the second issue; that is, that Myrtle is estopped to claim default. In support, John claims the Bank was in fact Myrtle's agent in taking installments from John's accounts and depositing them in Myrtle's accounts and accordingly the default, if any, is the fault of her agent Bank.

The District Court found that the Bank was not the agent of Myrtle. The Court relied on evidence which indicated that at the time of the divorce; it was John who decided to have the Bank take care of the installment payments; that it was John who authorized the Bank to take the money from his accounts; it appeared that Myrtle had no power to force the Bank to make the payments; and there was no evidence the Bank had ever represented Myrtle in dealings with her former husband.

John relies on evidence that Myrtle instructed the Bank to collect the money each month and deposit it to her personal accounts; that on five separate occasions, she gave differing sets of instructions to the Bank with respect to depositing the installment payments in her various accounts or to repay her loans. John also contends that Myrtle did in fact control the Bank's actions.

Clearly, the Bank was John's agent in withdrawing monies from his accounts to deposit the same in Myrtle's accounts. An agent is one who represents another in dealing with third persons. Section 28-10-101 MCA (formerly section 2-101, R.C.M.1947). The agency was created when John conferred authority on the Bank to withdraw the necessary sums from his accounts. Section 28-10-201 MCA (formerly section 2-114, R.C.M.1947). An agent has only

such authority as the principal actually or ostensibly confers upon him. Section 28-10-401 MCA (formerly section 2-122, R.C.M. 1947). Here only John could authorize the Bank to make withdrawals from his accounts. Both John and his agent Bank are deemed to have notice of whatever either has notice of and in good faith and the exercise of ordinary care and diligence ought to communicate one to the other. Section 28-10-604 MCA (formerly section 2-203, R.C.M.1947). John is responsible to Myrtle for the negligence of the agent Bank, if negligence of the Bank is involved in the transaction of the business of the agency. Section 28-10-602 MCA (formerly section 2-209, R.C.M.1947).

The agency relationship between Myrtle and the Bank, if any, was simply that the Bank would collect the proceeds from the installments from John and place them to Myrtle's credit in her accounts. It is nearer accurate to say that the Bank was merely Myrtle's depositary for the installment payments. Since Myrtle had no control over whether the payments could be taken from John's accounts by the Bank, failure of the Bank to make John's payments cannot be construed as a failure on the part of Myrtle.

The argument therefore that Myrtle is estopped from claiming default because the Bank was her agent must fail.

■ Proceeding to the next part of the estoppel issue, we determine that Myrtle cannot be held estopped by her silence or failure to make demand upon John for the payment of the notes.

The corporate defendants, in making the note, engaged that they would pay the instrument according to its tenor at the time of their engagement. Section 30-3-413 MCA (formerly section 87A-3-413, R.C.M.1947). John was a guarantor of the note. In the language of the guaranty, he assured that all sums stated in the note "shall be promptly paid in full, in accordance with the provisions thereof, at maturity, by acceleration, or otherwise," The language used in John's contract as guarantor of the note brings him within the provisions of section 30-3-416(1) MCA (formerly section 87A-3-416(1), R.C.M.1947). Under that statute, John, as guarantor engaged that if the instrument was not paid when due he would pay it according·

to its tenor. Under the same statute, where a guarantor is concerned, presentment, notice of dishonor and protest are not necessary to charge the guarantor. Section 30-3-416(5) MCA (formerly section 87A-3-416(5), R.C.M.1947).

Myrtle's right to accelerate the unpaid installments because of the default in making the earlier installments does not depend on any requirement that she make demand first for the payment of the unpaid installments. The terms of the note with respect to payments of installments are notice to the makers and to the guarantor of their duties with respect to those payments. Myrtle was not required to demand the installments first before accelerating the unpaid installments. See, *John K. and Katherine S. Mullen Benevolent Corporation v. School District No. 17-H, Bighorn County* (1935), 99 Mont. 388, 43 P.2d 902.

This Court has said that silence has no effect, either as estoppel or waiver, in the absence of a duty to speak on the part of the party to be estopped. *Solberg v. Sunburst Oil and Gas Company* (1926), 76 Mont. 254, 246 P. 168, 175. It is also said that where the foundation for a claimed estoppel is silence or that notice was omitted, the party relying thereon must not have had the means of knowing the true state of facts. *Scott v. Jardine Gold Mining and Milling Company* (1927), 79 Mont. 485, 257 P. 406, 410. John's contention that Myrtle is estopped by her silence fails at least these two tests. Accordingly, the claim to a defense of estoppel is not sustained.

We hold therefore, that the District Court was correct in entering judgment for the unpaid balance of the promissory note with interest thereon, and in ordering foreclosure of the mortgage.

The third issue rasied by defendants is the award of attorney fees.

The court found as a fact that it was necessary for Myrtle to employ counsel to prosecute the action, to foreclose the mortgage and to collect the note. It concluded that Myrtle was entitled to her costs therein, together with attorney fees, which the court fixed in the amount of $20,000.

The court entered judgment on November 8, 1977 for the sum of $123,000, giving credit to the defendants for $19,500 that was paid post-trial, and including the attorney fees award for a total judgment of $123,500. On the same date Myrtle's counsel filed her memorandum of costs amounting to $37.55 for the usual costs, and also noting as costs the amount awarded by the court in this judgment of attorney fees in the sum of $20,000. No motions were made to retax costs, or to amend, alter or revise the court findings.

In support of the attorney fees, Myrtle's counsel called W. G. Gilbert, Jr., a Dillon attorney, who has practiced there since 1939, except for the time when he was in military service. He had represented Myrtle in connection with her divorce action. From his experience as an attorney, and as one who has foreclosed mortgages, collected note indebtedness, and evaluated the chances of collecting such indebtedness, he gave as his opinion, over objection, that in the Dillon community, a fee between $15,000 and $25,000 would be proper in this case. The objection to his testimony was that he was not sufficiently acquainted with the complexity of this particular case, which was by the court overruled. He was not cross-examined as to his opinion relating to the attorney fees, although there was other cross-examination of this witness.

No contra evidence as to attorney fees was offered by the defendants.

The opinion of witness Gilbert was admissible under Rules 703 and 705, Mont.R.Evid.

Defendants complain that the amount of attorney fees awarded by the District Court is not supportable under the recent cases of *First Security Bank v. Tholkes* (1976), 169 Mont. 422, 547 P.2d 1328, and *Crncevich v. Georgetown Recreation Corporation* (1975), 168 Mont. 113, 541 P.2d 56. Defendants claim that witness Gilbert knew nothing about the amount and character of the services rendered by Myrtle's counsel, the labor, time and trouble involved in connection with the case, and the value, professional skill, character and standing of Myrtle's attorney.

The difficulty with defendants' claims with respect to such

guidelines is that no objections were made at the time of the admission of the testimony from the witness on those grounds to the District Court, and no cross-examination was made later to determine the extent of the witnesses knowledge with respect to those guildelines. Rule 705, Mont.R.Evid., mandates that the opinion of a qualified expert is admissible, and if opposing counsel believe the opinion is not founded on sufficient data, cross-examination is the shield to guard against unwarranted opinions. That rule states:

"The expert may testify in terms of opinion or inference and give his reasons therefore *without prior disclosure of the underlying facts or data*, unless the [judge] requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." (Emphasis added.)

Additionally, in foreclosure cases, it is the District Court which must fix the attorney fees, which fees must be allowed as a part of the costs. Section 30-9-511 MCA (formerly section 93-8613, R.C.M.1947) provides:

"In an action to foreclose a mortgage of real property, or a security interest in personal property, the court *must allow* as a part of the costs, a reasonable attorney's fee, which *shall be fixed by the court*, notwithstanding any stipulation in the instrument of any agreement between the parties to the contrary." (Emphasis added.)

This Court has held that in the absence of a specific contract with respect to attorney fees, the determination of the amount in foreclosure actions is within the sound discretion of the District Court; it could award attorney fees even without availing itself of the views and experience of other attorneys and may rely instead on its own knowledge of the usual compensation for such services and the practice of this Court. Even if evidence with respect to attorney fees is received, the District Court is not bound to make a decision according to that testimony, but may fix the same in the exercise of its own sound legal discretion. *Bohan v. Harris* (1924), 71 Mont. 495, 230 P. 586, 588. See also, *Bovee v. Helland* (1916), 52 Mont. 151, 156 P. 416.

■ We find no abuse of discretion in the award of attorney fees here, and the award is supported by substantial evidence.

Judgment affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and HARRISON concur.

MR. JUSTICE SHEA dissents and will file his dissent at a later time.