No. 80-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

DOROTHY BARMEYER, DAVID AND SHARON
COOK, KEVIN AND JANICE COUGHLIN, et al.,

Plaintiffs and Appellants,

vs.

THE MONTANA POWER COMPANY,

Defendant and Respondent.

---

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               Honorable John Henson, Judge presiding

Counsel of Record:

For Appellants:

Williams Law Firm, Missoula, Montana
Shelton C. Williams argued, Missoula, Montana
Richard Ranney argued, Missoula, Montana
Noel K. Larrivee argued, Missoula, Montana

For Respondent:

Garlington, Lohn & Robinson, Missoula, Montana
Gary L. Graham argued, Missoula, Montana
Sherman V. Lohn argued, Missoula, Montana

---

Submitted:  October 26, 1982

Decided:  January 17, 1983

Filed:  JAN 17 1983

Ethel M. Harrison

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Plaintiffs appeal from an adverse jury verdict and judgment entered thereon by the Fourth Judicial District Court of the State of Montana. We affirm.

On July 16, 1977, a grass and forest fire burned a large area in what is known as Pattee Canyon adjacent to Missoula, Montana. Property damage resulting from the fire gave impetus to these actions filed against the Montana Power Company. Trial of the actions commenced July 8, 1980, and continued through September 12, 1980, during which period there were thirty-three trial days. A verdict was rendered in favor of the defendant and judgment was entered on that verdict on September 17, 1980. Post-trial motions were heard and denied by the District Court on November 7, 1980. On December 3, 1980, the plaintiffs filed a notice of appeal.

Numerous issues are presented on appeal. Since the first issue concerns sufficiency of the evidence, we begin with a discussion of the record in this case. Testimony is necessarily capsulized and, because sufficiency of evidence is raised and factual issues were resolved in favor of the Montana Power Company, the facts set forth are presented in a posture most favorable to defendant.

The powerline, here in question, was established with three wires on the upper level and a neutral wire a short distance below. At the time in question, an old control cable was being removed and a new figure eight control cable had been installed. The old control cable was attached to the poles by ropes.

The west and center-phase wires were not energized; the east-phase was hot. The new control cable had a minimal current, and the old control cable and the neutral wire were not energized.

The evidence disclosed that power outages had been experienced prior to the fire. At one point, a power company serviceman found that the old control cable had contacted the

east-phase conductor. To eliminate future problems, the old control cable was lowered. Following lowering of the cable the power outages continued but were experienced less frequently.

The temperature at the time of the fire was about 94°F. There was a wind blowing in the area of the origin of the fire from west to east. Various estimates were given about the origin point of the fire, varying from fifty to eighty feet from a point on the ground directly beneath the closest phase of the powerline.

Shortly before the fire, witnesses observed children in the general area who were noted to be playing with firecrackers. Post-fire investigation revealed a matchbook and match, and a cigarette lighter in the area where the fire originated.

Plaintiffs sought to establish that the old control cable made contact with the east-phase conductor, thereby emitting sparks which caused the fire. Plaintiffs established burn-marks or arc-marks on the east-phase conductor at approximately the center of the span to the west of the fire origin area.

Both sides produced expert testimony. Plaintiffs' expert testimony sought to prove that sparks generated by defendant's powerline caused the fire. Defendant's expert testimony refuted this contention by offering evidence that the arc-marks existed prior to the day when the fire started and further sought to prove that any sparks produced by contact between the east-phase conductor and the control cable would not maintain sufficient heat intensity to ignite a fire at the point of origin of the fire in question.

The issues on appeal are:

(1) Whether there is sufficient evidence to support the verdict?

(2) Whether defendant's primary expert witness should have been permitted to testify and whether the court erred in rulings pertaining to his testimony?

(3) Did the trial court err in failing to exclude witnesses?

(4) Was prejudicial error committed by allowing opinion evidence of two lay witnesses?

(5) Did the trial court err in failing to order the production of statements given before trial by two witnesses?

(6) Was error committed in instructing the jury?

(7) Whether the trial court abused its discretion by failing to grant a new trial on the basis of newly discovered evidence?

SUFFICIENCY OF THE EVIDENCE

Motions to set aside jury verdicts as not supported by the evidence are proper only when there is a complete absence of any credible evidence in support of the verdict. All evidence and all inferences drawn therefrom must be considered in a light most favorable to the adverse party. The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision. Jacques v. Montana National Guard (1982), ___ Mont. ___ , 649 P.2d 1319, 1325-1326, 39 St.Rep. 1565, 1573-1574.

If this record contains admissible probative evidence to support defendant on either absence of negligence or failure of proximate cause, the verdict cannot be disturbed on a sufficiency basis. Here, defendant offered expert testimony which, if believed, would permit the jury to find for defendant. The question then centers on the admissibility of that testimony.

ADMISSIBILITY OF DEFENDANT'S EXPERT TESTIMONY

Defendant produced Harry Czyzewski, as its principal expert witness. Mr. Czyzewski's testimony resulted in several allegations of error presented on this appeal.

Through Mr. Czyzewski, defendant offered testimony that the arc-marks found on the east-phase conductor existed prior to the date upon which the subject fire occurred. The basis of the testimony involved application of a "corrosion analysis." Plaintiff objected to this testimony on the basis that corrosion analysis was not recognized by the scientific community.

The personal qualifications of the expert are well-documented

in the record. Mr. Czyzewski has a master's degree in metallurgical engineering and has worked as an independent consultant since 1946. He is a fellow of the American Institute of Chemists; he has won designation as the professional engineer of the year in Oregon; he was the first chairman of the combined Northwest Regional Industrial and Minerals Conference; he has authored or co-authored a series of technical papers on corrosion that were published or were delivered nationally at the National Association of Corrosion Engineers.

Part of the analysis accomplished under the supervision of the witness involved consideration of the corrosion film on the arc-marks found on the east-phase conductor and on the old control cable directly west of the fire-origin area. Mr. Czyzewski testified there were numerous scientific articles considering corrosion rates and that he, personally, had long years of experience in examining corrosion films and corrosion characteristics. Based upon the foundation, the trial court permitted the witness to conclude that the arc-marks on the lines predated the Pattee Canyon fire. This testimony was not rebutted by testimony presented by plaintiffs.

Plaintiffs contend that the area of corrosion analysis is not generally accepted or recognized by the scientific community and that any testimony concerning corrosion analysis is too speculative to be admissible. Plaintiffs further argue that this witness' testimony was received upon insufficient foundation.

Rule 702, M.R.Evid., governs admissibility of expert testimony. It provides:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

At one time before expert testimony was received, the courts required that foundation be laid showing that the testimony to be offered involved a field of science which had gained "general

acceptance" by the scientific community. See Frye v. United States (D.C.Cir. 1923), 293 F. 1013.

There has been a trend to liberalize the admission of expert testimony and the rule enunciated in Frye has been eroded. Weinstein states:

> "Viewed against this background, Rule 702's failure to incorporate a general scientific acceptance standard, and the Advisory Committee's Note's failure to even mention the Frye case must be considered significant. The silence of the rule and its drafters should be regarded as tantamount to an abandonment of the general acceptance standard." (footnote omitted) 3 J. Weinstein and M. Berger, Weinstein's Evidence ¶702[03], at 702-16.

We hold that the general acceptance rule is not in conformity with the spirit of the new rules of evidence. We agree with the philosophy articulated in United States v. Baller (4th Cir. 1975), 519 F.2d 463, cert. den. 423 U.S. 1019, 96 S.Ct. 456, 46 L.Ed.2d 391, wherein the circuit court of appeals said:

> "Deciding whether these conditions have been met is normally within the discretion of the trial judge. Absolute certainty of result or unanimity of scientific opinion is not required for admissibility. 'Every useful new development must have its first day in court. And court records are full of the conflicting opinions of doctors, engineers, and accountants, to name just a few of the legions of expert witnesses.' Unless an exaggerated popular opinion of the accuracy of a particular technique makes its use prejudicial or likely to mislead the jury, it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation." (Citations omitted.) 519 F.2d at 466.

In Steward v. Casey (1979), 182 Mont. 185, 595 P.2d 1176, this Court said:

> ". . . Rule 705, Mont.R.Evid., mandates that the opinion of a qualified expert is admissible, and if opposing counsel believe the opinion is not founded on sufficient data, cross-examination is the shield to guard against unwarranted opinions. . ." 182 Mont. at 193, 595 P.2d at 1180.

We find Mr. Czyzewski's testimony to have been sufficiently foundationed to foreclose a finding that the trial court abused its discretion in overruling plaintiffs' objections. The

- 6 -

searching and adept cross-examination by plaintiffs' counsel provided sufficient assurance that this jury was not necessarily misled or confused.

Plaintiffs also allege error resulting from the trial court's reception of evidence from Mr. Czyzewski regarding what was termed "vibration tests." The basis of plaintiffs' objections is that the tests were performed under conditions substantially dissimilar at the time of test from the conditions existing at the time of the fire.

The opinion expressed by Mr. Czyzewski was that under wind-induced conditions, contact between the east-phase conductor and the control cable would be very difficult to achieve. The witness conceded that his test showed it was possible for the lines to contact.

The court, ruling on plaintiffs' objection, noted that the lines were the same, the pole structures were the same and the basic configuration was the same. The court further indicated that there were some dissimilarities but that the dissimilarities could be adequately treated on cross-examination.

The conditions under which an experiment is conducted need not be identical to the conditions existing at the time of an accident. Were such a requirement enforced an experiment would seldom, if ever, be admissible. If the conditions of an experiment are substantially similar to the actual occurrence and the experiment will assist the jury in more intelligently considering the issue, then it should be permitted. Variations in conditions may simply go to the weight of the testimony and are properly explored on cross-examination. Breimon v. General Motors Corporation (1973), 8 Wash.App. 747, 509 P.2d 398. There was no abuse of discretion committed by the trial court here, when Mr. Czyzewski was permitted to testify regarding his vibration test.

Plaintiffs further allege error in being unduly restricted by the trial court in their voir dire examination testing the foun-

dation for Mr. Czyzewski's testimony. However, we have already ruled that the testimony was admissible with the foundation present in this record. Furthermore, the foundation for this witness's testimony was adequately explored in the very lengthy and adroit cross-examination conducted by plaintiffs' counsel.

Plaintiffs argue error in the trial court's refusal to permit the use of certain exhibits during Mr. Czyzewski's cross-examination. In reviewing the trial court's ruling on admission of illustrative exhibits, we must accord great deference to the trial court's discretion. Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 576 P.2d 711.

Exhibit 16A, offered by plaintiffs, was a chart of weather service records. There were sufficient inaccuracies in the chart to justify the trial court ruling denying use of the exhibit. The subject matter contained in the exhibit was adequately covered during the cross-examination.

Plaintiffs also attack the trial court's ruling which refused to admit plaintiff's exhibits 27A, 27B, and 27C. These exhibits were prepared by a law student employed by plaintiffs. This student had a bachelor's degree in business administration, but no degree in an area of science. Defendant's objection was premised upon the witness's lack of foundation to give scientific conclusions contained in the exhibits and for the further reason that the exhibits were not summaries which were admissible under Rule 1006, M.R.Evid. The trial court found that the source material from which the exhibits were compiled constituted sufficient proof and the exhibits themselves were cumulative; further, the exhibits were potentially misleading. We find that the trial court properly exercised its discretion in denying admission to these offered exhibits.

Mr. Czyzewski was paid $189,000 for services performed in connection with this litigation. Defendant offered proof that $51,600 of the charge was for cost in preparing, giving depositions, and answering interrogatories. Plaintiffs sought to prove

that these computations were in error. Plaintiffs again offered a chart, prepared by a law student, which was identified as exhibit 28B. Objection was made by defendant on the basis that the underlying documents had been placed in evidence and the exhibit was cumulative. The objection was sustained. We find no abuse of discretion on the part of the trial court as defendant had adequate opportunity to fully explore all of these facts during Mr. Czyzewski's cross-examination.

EXCLUSION OF WITNESSES

Plaintiffs contend that the trial court erred in failing to exclude witnesses pursuant to plaintiffs' motion requesting sequestration of witnesses. After opening statements and after the presentation of approximately sixteen witnesses, plaintiffs filed their motion. The court denied the motion on the basis it was untimely.

Rule 615, M.R.Evid., provides for the sequestration of witnesses upon motion of any party. The rule does not indicate when the demand must be made. Here, the trial court found that the motion came too late when made after sixteen witnesses had already testified. We find this to be a proper exercise of discretion by the trial judge. Additionally, the witnesses who testified following filing of the motion had been thoroughly deposed and the plaintiffs have not demonstrated prejudice as a result of failure to sequester the witnesses.

ADMISSIBILITY OF LAY TESTIMONY

Plaintiffs claim error in the trial court having received into evidence opinion testimony from two lay witnesses. In evaluating the testimony of these witnesses we must be guided by Rule 61, M.R.Civ.P., which provides in part:

> ". . . The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Defendant presented one Olaf Krook who testified that he saw a person run from the direction of the fire at a time he first noticed smoke at the point of the fire's origin. He also

testified that he had heard firecrackers and he thought some "kid" had started the fire with a firecracker. This testimony is lacking in probative value. However, in view of the voluminous record in this case, we find that any error in admitting such evidence was harmless.

Defendant also offered the testimony of a Mr. Cameron, who lived on Pattee Canyon Drive below the fire area. Cameron stated he observed a red pickup near the origin of the fire. He stated that the pickup was stopped abruptly at the roadblock; that a male person jumped from the back of the pickup, ducked down behind some cars, and ran down the road. Police were manning the roadblock. Cameron then testified, over objection, that it appeared to him as though the person was trying to hide from the police. Again, this testimony is conclusory and of little probative value. However, as in the case of Mr. Krook's testimony, we find the admission of this evidence to have been harmless in view of the extensive record in this case.

FAILURE TO ORDER PRODUCTION OF WITNESSES STATEMENTS

Plaintiffs urge error in the trial court's failure to order production of the statements of Susan Solis and Charles Basacher. A statement was given by Susan Solis on September 8, 1977, on behalf of defendant. Counsel for plaintiffs also interviewed the witness. At time of trial, this witness was interviewed separately by the court who explained her rights with respect to the statement. Defendant agreed that if Susan Solis wanted a copy of her statement, she would be entitled to it and that if she wished to give a copy to counsel for plaintiff, she had a right to do so. After a full explanation the witness said she did not want a copy of her statement. During cross-examination she testified that she had seen a copy of the statement and reviewed it prior to her testimony.

Rule 612, M.R.Evid., provides:

> "If a witness uses a writing to refresh his memory for the purpose of testifying, either
>
> "(1) while testifying, or

"(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness. . ." (Emphasis added.)

In this case, the trial court advised the witness that she was entitled to a copy of her statement and she stated she did not wish to have the statement. The plaintiffs had sought production of the statement before trial pursuant to Rule 34, M.R.Civ.P. Discovery was denied. No error is claimed in denying discovery.

The commission comment to Rule 612, M.R.Evid., provides in part as follows:

". . . There are no cases in Montana which have specifically dealt with the right of the adverse party to gain access or to use the writing used to refresh memory. The right is mentioned in State v. Watkins, supra, 156 Mont. at 462, and State v. LaFreniere, supra, 163 Mont. at 25. Allowing a party to demand the production of a writing used to refresh a witness' memory before testifying is consistent with Montana law to the extent that such a writing would be discoverable in civil cases under Rule 34(a)(1), M.R.Civ.P., and in criminal cases under R.C.M. 1947, section 95-1803(c). . ."

Rule 612, specifically grants the trial court discretion in determining whether a statement used to refresh recollection must be given to an adverse party. Under the facts that we have herein outlined no abuse of discretion was committed by the trial court in denying access to plaintiffs.

A Mr. Basacher also gave a statement to defendant. This witness reread the statement several weeks before trial but stated it did not refresh his recollection. The statement did not fall within the ambit of Rule 612 and the trial court did not err in refusing its production.

ALLEGED INSTRUCTION ERRORS

Plaintiffs claim error in the trial court's refusal to give a res ipsa loquitur instruction. Plaintiffs rely upon this Court's recent decision in Tompkins v. Northwestern Union Trust Company

of Helena (1982), _ _ Mont. _ _ , 645 P.2d 402, 39 St.Rep. 845. In the Tompkins case we held that, where the evidence disclosed the possibility of alternative causes, the giving of a res ipsa instruction was not foreclosed. However, we recited the following elements necessary for the application of the doctrine:

> "(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when: (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff . . ." 645 P.2d at 406, 39 St.Rep. at 849.

In Tompkins, the principle debate concerned the application of subsection (b) as quoted above. Here we find the requirements of subsection (a) are not fulfilled. This is not an event which ordinarily does not occur in the absence of negligence. In this case, a fire started fifty to eighty feet from the closest of defendant's lines. We are unable to look at the physical facts of this accident and say that the existence of a fire speaks of negligence on defendant's part.

In Tompkins, defendant was at the controls of an airplane which crashed causing the decedent's death. We simply held that such an event, that is the crashing of an airplane, speaks of negligence on the part of the pilot.

In the case at bar, we are not able to look at the physical facts and say that a fire, not physically connected with defendant's line, speaks of negligence on the part of defendant in construction or maintenance of its line. Therefore, the event in question is not of the kind contemplated by the first subsection of the rule enunciated in the Tompkins case. The trial court did not err in failing to give a res ipsa instruction.

Plaintiffs' assign as error the refusal of the trial court to give a number of proposed instructions dealing with the National Electric Safety Code. The National Electric Safety Code was admitted into evidence and the jury had all sections of the

code before them. The court did not err in failing to give instructions regarding specific aspects of the code. General instructions were sufficient in view of the fact that the code itself was admitted in evidence and was available for the jury's perusal.

Appellants object to court's instruction no. 22 contending that the trial court erred in interpreting section 69-4-201, MCA, which adopts the National Electrical Safety Code in Montana. Section 69-4-201, MCA, provides:

> "The national electrical safety code standards shall govern all future construction involving wires for power, heat, light, telephone, telegraph, or signal transmission or reception. Except as provided in 69-4-203, electrical construction of overhead and underground electrical supply and communication lines in the state shall be in conformity with the rules set forth in the national electrical safety code approved by the American national standards institute as published by the institute of electrical and electronic engineers. The national electrical safety code shall furnish construction standards and shall be enforced by the public service commission."

The court instructed the jury, in instruction no. 22, as follows:

> "You are instructed that National Electrical Safety Code has been adopted by section 69-4-201, MCA, which provides in substance that all electrical construction of overhead and underground electrical supply and communication lines in the state shall be in conformity with the rules set forth in the National Electric Safety Code. In all respects other than construction, the National Electric Safety Code is evidence of a standard of care to be considered by you along with all the other evidence presented relating to the standard of care.

> "If you find from the evidence that a party to this action conducted himself or herself in violation of a statute, you are instructed that such conduct was negligence as a matter of law.

> "However, in this action, a violation of law is of no consequence unless it was a proximate cause of an injury found by you to have been suffered by the Plaintiffs.

> "The duty of care with which an electric power company is charged consists not only in the proper installation of the instrumentality, but in the maintenance thereof in a safe con-

> dition at all times and places and under the
> changing circumstances of the particular case.
> Even if at the outset of the installation of
> the equipment the company may have been
> entirely free from fault, yet, if under
> changing circumstances, a hazardous condition
> arose, nonaction or the failure to adequately
> remedy such a condition would constitute
> negligence."

Appellant contends that section 69-4-201, MCA, incorporates the entire National Electrical Safety Code and that the violation of any provision of the Code constitutes negligence per se. On the other hand, respondent contends that only construction standards were specifically adopted by the statute and therefore the balance of the National Electric Safety Code creates only evidence of a standard of care to be considered in determining negligence.

We find the trial court's construction of 69-4-201, MCA, to be a reasonable one. The statute only specifically incorporates construction standards. In the absence of specific statutory incorporation, the provisions of the National Electrical Safety Code can only furnish evidence of a standard of care. We affirm the giving of instruction no. 22.

Plaintiffs also allege error in the court's failure to give their proposed instruction No. 17, which stated that the control cables in question were within the "communication line" definition of the National Electric Safety Code's "line of sight" rule. However, this fact was disputed. Defendant offered testimony that the control cable was not within the meaning of the "line of sight" rule, and if this testimony were believed by the jury, the code relating thereto would have no application. Therefore, the trial court properly refused plaintiffs' instruction No. 17, which mandated the jury find the control cable to be a line within the code's "line of sight" rule.

We find that all aspects of plaintiffs' theory were submitted to this jury under the instructions given, and the instructions submitted by the court were correct statements of the law.

NEWLY DISCOVERED EVIDENCE

After the conclusion of the trial, on September 26, 1980, the plaintiffs filed a motion for new trial pursuant to Rule 59, M.R.Civ.P. The basis for a new trial was newly discovered evidence in the form of testimony of one M. C. Bowman, of Ronan, Montana. After hearing arguments concerning the propriety of granting the new trial and after allowing the testimony in full from Mr. Bowman, the trial court denied the motion for a new trial.

The prerequisites for granting a new trial on the basis of newly discovered evidence are set forth in Kerrigan v. Kerrigan (1943), 115 Mont. 136, 139 P.2d 533, and Kartes v. Kartes (1977) 175 Mont. 210, 573 P.2d 191. They are: (1) that the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not want of diligence on the part of the moving party which resulted in the evidence failing to come to light earlier; (3) that the evidence is so material that it would probably produce a different result upon another trial; (4) that the evidence is not merely cumulative; (5) that the application is supported by an affidavit; (6) that the evidence must not be such as will only tend to impeach the credibility of a witness.

The trial court found that the testimony of Mr. Bowman was not so material that it would probably produce a different result at trial. A review of Mr. Bowman's testimony reveals that there are serious concerns regarding his credibility and the foundational basis for his testimony. He stated he did not recall the vantage point from which he watched the fire. At times he positioned himself where he could not have seen the fire. Furthermore, he stated that he could not segregate what he personally knew from that which he had garnered from media reports. Although Mr. Bowman's testimony is offered by plaintiff to show that defendant's powerline started the fire, his testimony as presented to the trial judge is so lacking in its persuasiveness that we find no abuse of discretion on the trial court's part when it found that the testimony would not likely produce a dif-

ferent result.

This case was more than adequately tried by counsel for all parties. Trial counsel are to be commended for the high degree of professional competence displayed in this case. The trial was long and difficult. No trial of such complexity and length can be perfect. However, here we have a record that reveals not only a high degree of competence on the part of counsel, but outstanding work by the trial judge. We may not agree with the result, but the parties had a fair trial with a record as free of error as is possible to deliver in our system of justice.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Honorable John M. McCarvel, District
Judge, sitting in place of Mr. Justice
John C. Sheehy.

Mr. Justice Daniel J. Shea and Honorable John M. McCarvel, District Judge, dissent and will file written dissents later.