No. 90-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

GEORGE RONALD WALTERS,

      Defendant and Appellant.



APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Michael Donahoe, Esq., Helena, Montana

      For Respondent:

         Hon. Marc Racicot, Attorney General; Elizabeth
Griffing, Assistant Attorney General; Helena,
Montana

         Patrick L. Paul, County Attorney; Tammy Plubell,
Deputy County Attorney; Great Falls, Montana


Submitted on Briefs:  November 29, 1990

Decided: January 28, 1991

Filed:

<span style="display:block; text-align:center;">Clerk</span>

Chief Justice J. A. Turnage delivered the Opinion of the Court.

George Ronald Walters appeals his felony convictions of sexual assault and sexual intercourse without consent following a jury trial in the Eighth Judicial District, Cascade County. We affirm.

Walters presents the following issues:

1. Did the District Court abuse its discretion in determining that the four-year-old victim was competent to testify?

2. Did the District Court improperly conclude that the State did not have to prove the reliability of an expert witness's testimony concerning the child victim meeting the profile of a sexually abused child?

3. Did the District Court abuse its discretion in allowing a police officer to refresh his recollection by reviewing the transcript of an interview the officer had with the appellant?

4. Did the District Court err when it excluded evidence that the victim's mother had, as a child, made a complaint of sexual abuse against her father?

5. Did sufficient evidence exist to support the appellant's conviction of sexual intercourse without consent?

6. Did the District Court abuse its discretion in not sentencing the appellant under the incest statute, § 45-5-507, MCA?

In 1988, the appellant, George Ronald Walters, and his wife, Ruth, resided in Great Falls, Montana, as did their son, Rodney Walters. Rodney lived with Cindy Cameron and Cindy's three-year-old daughter, K.C. Although Rodney was not the natural father of

2

K.C., he considered himself K.C.'s stepfather. K.C., in turn, called Rodney "Dad" and also referred to appellant and Ruth as "Grandpa Ron" and "Grandma Ruth."

On December 28, 1988, Rodney, Cindy, and K.C. went to appellant and Ruth's home to do laundry. While there, Cindy and Rodney decided to go to a movie, which began around 9:00 p.m. Cindy and Rod left K.C. with Ruth; appellant was not home at this time. Prior to departing for the movie, Cindy dressed K.C. in a nightgown and panties and prepared her for bed.

Appellant returned home shortly after Rodney and Cindy had departed. Because Ruth was not feeling well and had to arise early the next day to go to work, she asked appellant to watch K.C. until Rodney and Cindy returned. Ruth then retired to her separate bedroom and closed her bedroom door, although Ruth remained awake and recalled hearing activity in the house until 11:15 p.m.

Ruth testified she left her bedroom and checked on appellant and K.C. on two occasions that evening, once at around 11:30 p.m. and once at around 12:00 a.m. On the first occasion, Ruth noticed that K.C. was not in the bedroom where she had instructed appellant to put her. She then checked appellant's bedroom; the door was open and the room was dark and quiet. Ruth concluded that appellant and K.C. were asleep in appellant's bedroom, and returned to her bedroom. On the second occasion, Ruth testified that she got up and noticed that everything appeared the same; appellant's bedroom was dark and quiet.

3

Rodney and Cindy returned from the movie at about 12:15 a.m. Upon entering the house, Rodney went into a nearby bathroom, and Cindy proceeded to the living room, where she expected to find K.C. sleeping on the couch. When Cindy did not find K.C. in the living room, she proceeded down the hallway to Ruth's bedroom. In the hallway, Cindy was greeted with a hug by an excited K.C. K.C. then pulled up her nightgown, revealing that she was no longer wearing her panties. Cindy assumed that K.C. left her panties in a bathroom, and asked her to retrieve them; K.C. responded, "no." Cindy again asked K.C. to get her panties and K.C., once again, refused and told Cindy that Grandpa Ron had removed her panties and had "tickled her with his pee."

Shortly thereafter, Rodney appeared from the bathroom, and the visibly-shakened Cindy requested that the three go downstairs in the laundry room and talk. Upon Cindy's request, K.C. repeated to Rodney and Cindy that Grandpa Ron had removed her panties and "tickled her with his pee." Rodney then went upstairs, woke up his mother, Ruth, and asked her what happened.

Cindy and K.C. returned upstairs to the living room, where they were joined by Rodney and Ruth. Cindy asked Ruth to find K.C.'s panties. Upon looking for the panties, Ruth entered appellant's bedroom, and found the panties in his bed. Ruth gave the panties to Cindy. K.C. then repeated her allegations to Ruth, Rodney and Cindy, and added that Grandpa Ron had also "stuck his pee in her mouth and went like that," gesturing an in-and-out

4

movement with her finger in her mouth. K.C. also stated that "it got small and big."

Rodney then confronted appellant with K.C.'s allegations; appellant was in a bathroom located close to his bedroom at this time. Appellant responded with further questions and never denied the allegations; he stated that he was tired and wanted to return to bed.

Rodney returned to the living room, and with Cindy and K.C., gathered their belongings and went outside to their car. Rodney then briefly returned to the house where he again confronted appellant about K.C.'s allegations before leaving.

Confused and upset, Rodney, Cindy, and K.C. drove to the home of Cindy's sister to use a telephone; it was now in the early morning hours of December 29, 1988. While there, Cindy telephoned her parents, who advised her to immediately take K.C. to the hospital for a physical examination. Rodney and Cindy complied with this advice, and took K.C. to the Montana Deaconess Medical Center Emergency Department following the phone call. There, Dr. Nora Gerrity, a pediatrician, observed that K.C. had redness and swelling around her vagina, which was consistent to frictional trauma associated with sexual contact. Dr. Gerrity testified that such redness around the vagina could not have been caused by an infection or a self-inflicted act.

While K.C. was being examined by Dr. Gerrity, Police Detective Robert Dykemen arrived at the hospital and interviewed Rodney and

5

Cindy concerning the incident. The following day, December 30, 1988, Dykemen tried to interview K.C., but she refused to talk with him. Additionally, on January 2, 1989, Dykemen interviewed appellant about the incident. Dykemen testified that appellant indicated more than once during the interview that he was feeling "bad and ashamed," that "it may have happened," and that he generally felt guilty about the incident.

Irene Johnson, a social worker for the Department of Family Services, interviewed K.C. following the incident. Ms. Johnson testified that K.C. was a verbal three-year-old girl who was able to relate a truthful story. Ms. Johnson also believed that K.C.'s mother did not coach K.C. in any way concerning her accounting of the incident. Ms. Johnson referred K.C. to Dr. Janet Hossack, a psychologist and therapist specializing in child sexual abuse, for counseling.

After working with K.C., Dr. Hossack concluded that K.C.'s behavior was consistent with that of a sexually abused child. Prior to the incident, K.C. had been toilet-trained and after the incident, she not only urinated but defecated on the floor. K.C. had been dry during the day and most nights, but after the incident, was wet during the day and night. K.C. had been sleeping fine in her own bed, but after the incident, had difficulty sleeping without her mother. About a month after the incident, K.C. began acting out sexually by masturbating, had periods of spacing out, experienced temper tantrums, and was increasingly

6

hyperactive and irritable. Based on K.C.'s actions and accounting, Dr. Hossack believed that K.C. had been sexually abused. Dr. Hossack also noted that a three- to four-year-old child is incapable of fabricating such an incident.

On March 14, 1989, appellant was charged by information with sexual assault and sexual intercourse without consent in violation of §§ 45-5-502, and -503, MCA. The information alleged that appellant had subjected K.C. to sexual contact by rubbing his penis against her vaginal area and to sexual intercourse without consent by placing his penis in K.C.'s mouth.

Original counsel for appellant stipulated to the admittance of a videotape deposition of K.C., which was taken on December 7, 1989. On December 11, 1989, however, appellant dismissed his original counsel, and obtained new counsel. Upon reviewing the videotape deposition, appellant's new counsel objected to the admittance of the videotape deposition asserting that K.C. was not a competent witness. A competency hearing was held prior to trial on January 15, 1990. The District Court, after examining K.C. and Dr. Hossack, determined that K.C. was a competent witness, and held K.C.'s videotape deposition admissible.

On the videotape, K.C. testified that she understood what it meant to tell the truth, and that there were consequences if she failed to tell the truth. Although K.C. displayed some confusion and inconsistency during parts of her videotape deposition, she accurately responded to questions pertaining to her age, name, and

7

colors in the room. Additionally, K.C. responded to questions with regard to the incident.

Following the jury trial, on January 16, 1990, appellant was found guilty of sexual assault and sexual intercourse without consent. On February 22, 1990, the District Court sentenced appellant to twenty years imprisonment for sexual assault with ten years suspended, and thirty-five years imprisonment for sexual intercourse without consent with ten years suspended, both of these sentences to run consecutively. From this judgment, appellant appeals.

1. Did the District Court abuse its discretion in determining that the four-year-old victim was competent to testify?

Montana Rule of Evidence 601 provides:

> (a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.
>
> (b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or (2) the witness is incapable of understanding the duty of a witness to tell the truth.

"Witness competency is within the discretion of the trial court." State v. Eiler (1988), 234 Mont. 38, 43, 762 P.2d 210, 214 (citations omitted). "The requirements for determining competence are 'capacity of expression and appreciation of the duty to tell

8

the truth.'" <u>Eiler</u>, 234 Mont. at 42, 762 P.2d at 213 (citations omitted). Here, the District Court committed no error because it methodically and carefully determined, in a competency hearing before the trial, that K.C. was capable of expressing herself and that she appreciated the duty to tell the truth.

Appellant argues that the District Court erred by relying solely on the information concerning K.C.'s ability to communicate and to tell the truth, which was disclosed during the competency hearing on the morning of the trial. Appellant contends that the court should have reviewed K.C.'s videotape deposition, which exhibited some inconsistencies in K.C.'s testimony, to determine her competency. Appellant's argument lacks merit. Inconsistencies in a witness's testimony are not matters of competency, but rather, matters of credibility. And, evaluating the credibility of a witness falls strictly within the province of the jury. State v. Newman (1990), 242 Mont. 315, 321, 790 P.2d 971, 974 (citations omitted). We therefore hold that the District Court did not abuse its discretion when it determined that K.C. was a competent witness.

2. Did the District Court improperly conclude that the State did not have to prove the reliability of an expert witness's testimony concerning the child victim meeting the profile of a sexually abused child?

In raising this issue, appellant is essentially asking this Court to adopt the two-pronged _Frye_ test, which states that expert witness testimony lacks foundation unless it is established that the expert's testimony is based upon well-recognized scientific principles _or_ has gained "general acceptance" in the expert's field.  Frye v. United States (D.C. Cir. 1923), 293 F. 1013, 1014. Appellant's argument lacks merit.   This Court has expressly rejected the "general acceptance" prong of the _Frye_ test.  Barmeyer v. Montana Power Co. (1983), 202 Mont. 185, 193, 657 P.2d 594, 598; State v. Clark (1988), 234 Mont. 222, 227, 762 P.2d 853, 856.

Montana Rule of Evidence 702, adopted fifty-four years after the _Frye_ decision, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

In _Barmeyer_, we held that the "general acceptance" rule of the _Frye_ test was "not in conformity with the spirit of the new rules of evidence. . . . 'Unless an exaggerated popular opinion of the accuracy of a particular technique makes its use prejudicial or likely to mislead the jury, it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation.'"   _Barmeyer_, 202 Mont. at 193-94, 657 P.2d at 598 (citations omitted).  Here, Dr. Hossack's testimony was neither

10

prejudicial nor misleading. And, appellant had the opportunity to attack the weight of Dr. Hossack's testimony through cross-examination.

Appellant further argues that besides the "general acceptance" prong, the remaining prong of the Frye test requires a threshold determination of reliability of expert testimony to novel areas of scientific expertise, citing United States v. Downing (3d Cir. 1985), 753 F.2d 1224, 1237-39. Appellant asserts that expert testimony concerning sexual abuse of children is a novel area in Montana. This Court, however, has recognized and sanctioned expert testimony concerning sexual abuse and specifically has allowed expert testimony concerning a child fitting the profile of a sexually abused child, and thus, this area is not a novel area of scientific expertise. State v. Donnelly (Mont. 1990), 798 P.2d 89, 93, 47 St.Rep. 1600, 1604. We therefore hold that the District Court committed no error by allowing Dr. Hossack's testimony without requiring a threshold determination of the reliability of her testimony.

3. Did the District Court abuse its discretion in allowing a police officer to refresh his recollection by reviewing the transcript of an interview the officer had with the appellant?

Prior to testifying Officer Dykeman reviewed a transcript of his interview with the appellant, which occurred on January 2, 1989, for the purpose of refreshing his memory; the transcript

11

was not introduced into evidence. Appellant asserts that the District Court erred by allowing Officer Dykeman to refresh his recollection of the interview by reviewing the transcript because the original audio tapes of the interview were erased by the police department for economic reasons, and these tapes were the best evidence. We disagree. Montana Rule of Evidence 612 allows a witness to refresh his or her memory by reviewing a writing prior to or during their testimony. Furthermore, the best evidence rule concerns matters of admissibility. Here, the best evidence rule is inapplicable because the admissibility or inadmissibility of the writing does not affect the writing's availability for the use of refreshing a witness's memory. See Johnson Equipment, Inc. v. Nielson (Idaho 1985), 702 P.2d 905, 908. As long as the writing is not introduced into evidence, and here it was not, a witness may refresh his recollection for the purpose of testifying. State v. LaFreniere (1973), 163 Mont. 21, 25-27, 515 P.2d 76, 78-80. We therefore hold that the District Court did not abuse its discretion in allowing the police officer to refresh his recollection of the interview by reviewing the transcript.

4. Did the District Court err when it excluded evidence that the victim's mother had, as a child, made a complaint of sexual abuse against her father?

Montana Rule of Evidence 402 provides, in pertinent part, that "[a]ll relevant evidence is admissible. . . ." Montana Rule of

12

Evidence 401 defines relevant evidence as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant."

It is within the discretion of the trial court to determine issues of admissibility, and the trial court's ruling will stand upon review unless the record indicates that the trial court abused its discretion. State v. Crazy Boy (1988), 232 Mont. 398, 402, 757 P.2d 341, 343 (citations omitted).

Here, the District Court found that Cindy's accusations of sexual abuse against her father (K.C.'s maternal grandfather) was irrelevant to the case at hand, and thus, inadmissible. Appellant, however, asserts that this evidence supports his theory that on the night of the incident, K.C. was asleep and was recalling a past alleged incident of sexual abuse committed by her maternal grandfather through a dream. Upon being awakened by her mother's return from the movie, K.C. confused her dream with appellant, and wrongly accused appellant as the assailant.

Appellant's theory is unfounded. Although Ruth testified that she assumed K.C. was asleep when she twice observed that appellant's bedroom was dark and quiet the night of the incident, the record is void of any evidence to support appellant's theory that K.C. was dreaming of a past alleged sexual abuse incident involving

13

her maternal grandfather. We therefore hold that the District Court did not abuse its discretion when it determined that this evidence was irrelevant and inadmissible.

5. Did sufficient evidence exist to support the appellant's conviction of sexual intercourse without consent?

The standard for reviewing issues concerning sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; restated in State v. Wilson (Mont. 1981), 631 P.2d 1273, 1278-79; State v. Geyman (1986), 224 Mont. 194, 195-96, 729 P.2d 475, 476,; State v. Gilpin (1988), 232 Mont. 56, 68, 756 P.2d 445, 451; and State v. Kao (Mont. 1990), ___ P.2d ___, ___, 47 St.Rep. 2100, 2102. Appellant asserts that the record lacked sufficient evidence to convict him of sexual intercourse without consent.

Section 45-2-101(61), MCA, provides, in pertinent part, that "'Sexual intercourse' means penetration of the vulva, anus, or mouth of one person by the penis of another person. . ." And, § 45-5-503(3)(a), MCA, provides, in pertinent part, that "without consent" means that the victim is incapable of consent because he or she is less that sixteen years of age.

14

Here, the record contains sufficient evidence that appellant put his penis in three-year-old K.C.'s mouth, and therefore, committed the crime of sexual intercourse without consent in violation of § 45-5-503, MCA. Cindy, Rodney, and appellant's wife all testified that K.C. stated to them on the night of the incident, appellant had "stuck his pee in her mouth and went like that," gesturing an in-and-out movement with her finger in her mouth. Furthermore, Dr. Hossack testified that K.C. told her an accounting of the incident consistent to the above testimony and that K.C. was not capable of fabricating such an accounting. Dr. Hossack, as well as Irene Johnson, testified that it was their belief that K.C. was credible and was not coached by her mother with her accounting of the incident. Furthermore, Officer Dykeman testified that in his interview with the appellant concerning the incident, appellant indicated more than once that he was feeling "bad and ashamed," and that "it may have happened."

It is important to clarify that during trial, appellant's counsel made no objections based on hearsay grounds with regard to the testimony of Cindy, Rodney, Ruth, Irene Johnson, and Dr. Hossack, which discussed the statements K.C. made to them. In the event a hearsay objection had been made, the testimony of Cindy, Rodney, and Ruth, although hearsay, would be excepted as an excited utterance under Montana Rule of Evidence 803(2). However, no hearsay issues were preserved for appeal by proper objections at trial with regard to any of the above testimony. We therefore hold

15

that sufficient evidence existed to support the appellant's conviction of sexual intercourse without consent.

6. Did the District Court abuse its discretion in not sentencing the appellant under the incest statute, § 45-5-507, MCA?

On January 16, 1990, a jury found appellant guilty of one count of sexual assault and one count of sexual intercourse without consent as charged. On February 22, 1990, the District Court sentenced appellant to twenty years imprisonment for sexual assault with ten years suspended, and thirty-five years imprisonment for sexual intercourse without consent with ten years suspended, both of these sentences to run consecutively. Appellant argues that because it was recognized during trial that he and K.C. had a grandparent-grandchild relationship, he should have been sentenced under the incest statute, § 45-5-507, MCA.

Appellant's argument lacks merit, and is a clumsy attempt to decrease his prison sentence. Appellant was charged and convicted of sexual assault and sexual intercourse without consent, not incest. The District Court properly sentenced appellant under the sexual assault and sexual intercourse without consent statutes, §§ 45-5-502 and -503, MCA. The fact that a grandparent-grandchild relationship between appellant and K.C. was recognized during trial, although no blood-line relationship exists here, does not serve to alter the charges, convictions or sentences against

16

appellant.  We therefore find that no error was committed by the District Court.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

17